**Lucius McKOY, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 83–306, 84–855.**

District of Columbia Court of Appeals.

Argued April 16, 1986.
Decided Dec. 15, 1986.

David Carey Woll, Washington, D.C., appointed by this court, for appellant.

Robert Carson Godbey, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Judith Hetherton and Charles L. Hall, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before NEBEKER, TERRY and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

Appellant McKoy seeks a reversal of his convictions for one count of first degree burglary, D.C.Code § 22–1801 (1981), two counts of sodomy, D.C.Code § 22–3502 (1981), and one count of robbery, D.C.Code § 22–2901 (1981). He contends that the trial court wrongly denied his mistrial motion based on the allegedly improper cross-examination of appellant concerning his change in defense from alibi to consent.[1] Finding no "plain error", we affirm.

### I

The complainant, Jane Doe,[2] was attacked in her Capitol Hill home on September 9, 1982, at approximately 10 p.m. After awakening from a nap on her couch, she walked into her kitchen where her assailant grabbed her and held a sharp object at her back. He told her to blindfold herself with a dishtowel and forced her into the living room. There, she pretended to faint and fell to the floor. She then heard the intruder moving about the house. Eventually, he approached Doe, removed her pants, and performed various sexual acts on her. The assailant then tied her up with a cut telephone cord. After he left, she freed herself, ran upstairs and called the police.

Doe testified that she later discovered the inside cover to the unfinished hatch in her bathroom ceiling had been opened. She noticed that several pieces of jewelry, two cameras, a small stereo, and $20 in cash were missing. The contents of her purse had been dumped out onto the kitchen table.

Police investigators found the small stereo in some weeds near the house. They also found two bank deposit slips in the living room, both in the names of McKoy and his mother, as well as a pawn shop receipt, made out to McKoy, outside

---

1. Before us are both a direct appeal from the conviction and an appeal from a denial of a motion to vacate the conviction made under D.C.Code § 23–110 (1981). We have considered and reject without extended discussion the remaining points raised by McKoy in his appeal: 1) abuse of discretion by the trial court in denying McKoy's request for a continuance, *Ungar v. Sarafite*, 376 U.S. 575, 588–89, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964) (continuance is "traditionally within the discretion of the trial judge," based upon the "circumstances presented"); 2) failure to prove that the victim's property was taken from her "immediate actual possession," D.C.Code § 22–2901 (1981); *see Giles v. United States*, 472 A.2d 881, 884 (D.C.1984) (sufficient to show that victim was "violently prevented from exercising possession over her property");

3) two acts of sodomy punishable only as a single count, *see* D.C.Code § 22–3502 (1981) (proscribes taking and placing sex organ into mouth as separate prohibited acts); *Jones v. United States*, 362 A.2d 718, 719–20 (D.C.1976) (taking of money from cash register and from salesclerk's purse held to be two separate robbery offenses, even though there was only one victim); 4) ineffective assistance of counsel in failing to file motion to suppress and to locate defense witnesses, *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) (ineffectiveness, if any, must "deprive the defendant of a fair trial, a trial whose result is reliable").

2. "Jane Doe" is a fictitious name.

the rear kitchen door. Furthermore, police found McKoy's fingerprints on several items in Doe's house, including items from her purse. Other expert testimony indicated that the pubic hairs found on Doe's living room floor and rug matched those in a sample taken from McKoy. In a search of McKoy's house one day after the incident, police discovered two pieces of jewelry identified by Doe as hers.

In defense, McKoy testified that on September 9, 1982, at about 9 p.m., he was on his way from his grandmother's house, a few blocks from Doe's house, to see a friend. On his way he met Doe near her house. Although they had never met before, she invited him inside for a drink. They sat together on the couch in her living room; after some conversation she began to make sexual overtures to him. He testified that they performed sodomy on each other, and that when Doe offered him "anything" to have intercourse, McKoy asked Doe for $45.00. They eventually agreed upon payment by household items which he could pawn and she could later redeem. After an angry disagreement ensued over their value, McKoy decided to take the allegedly stolen items and the stereo, but put the stereo down, telling her she could come get it. He later pawned the other goods. The next day, on September 10, 1982, the police called McKoy down to the station and arrested him.

During the trial, on cross-examination appellant was questioned at length about his interrogation by Detective Coleman at the police station after his arrest. Appellant admitted having made certain statements concerning his activities on the previous day and evening and denied making others. Coleman, testifying in rebuttal

from his typewritten account of the interrogation, related how appellant had given an extended description of his movements that placed him other than at the Doe home, and had explained his possession of some of the stolen items as having been found by him in a bag on the street. In the course of the questioning of appellant and Coleman about the interrogation, the names arose of the four prospective witnesses subsequently introduced to the jury.[3]

Prior to trial, defense counsel had filed notice pursuant to Super.Ct.Crim.R. 12.1(a) of his intention to present an alibi defense. At the beginning of the trial proceedings, he presented his four prospective defense witnesses to the court and to the jury panel. However, shortly after the jury had been selected, McKoy retracted his alibi and revealed to counsel his proposed defense of consent, as outlined above. McKoy's counsel informed the court of the change in the defendant's position from alibi to consent and moved for a continuance. The government opposed the motion. The court asked McKoy why he had chosen to wait until that time to reveal this information. McKoy responded that it was because he lacked faith in his counsel, and because he didn't want his fiancee to know what he had done with Doe.[4] The court denied the motion because, among other reasons, the defendant had a long weekend to prepare his new defense.

## II

The questioning upon which appellant based his mistrial motion occurred during the cross-examination of appellant. After appellant had testified on direct examination that Doe had initiated the sexual activi-

---

3. One of the witnesses, Beatrice Blunt, was not mentioned by name, but only as his "grandmother" whose house was at several times during the evening. On cross-examination at trial, appellant denied that he had told Coleman that he saw Keith and Patricia Butler that evening, and Coleman was not specifically asked about them. However, subsequently at the hearing under D.C.Code § 23–110, McKoy indicated that he had mentioned their names to Coleman.

Neither the typed account nor the handwritten notes of the interrogation are in the record on appeal.

4. McKoy, in his defense testimony, also explained his failure to tell Coleman of his sexual activity with Doe by asserting that Coleman had never told McKoy that he was being charged with rape, an assertion rebutted by Coleman.

ty and had given him the property, and after cross-examination about this testimony and about appellant's statements to Coleman at the time arrest, the prosecutor began to probe into appellant's notice of alibi under Super.Ct.Crim.R. 12.1(a),[5] but was cut short by the court.[6] However, the court then permitted the prosecutor to ask several questions eliciting in general terms that appellant had originally planned to assert an alibi defense but later switched to a consent defense. These questions were:

> Q. Sir, is it not a fact that you planned to call as witnesses in this case Beatrice Blunt, Evelyn Calloway, Patricia Butler, Keith Butler, to act as an alibi witness for you?
>
> [Objection overruled.]
>
> A. Yes.
>
> Q. As a matter of fact, sir, you didn't decide to change your defense from one of alibi, that is, that you were never in the presence of [Ms. Doe] on September 9, 1982, until after we have already

picked the jury in this case; is that correct?

> [Objection overruled; continuing objection noted.]
>
> A. Yes.
>
> Q. Sir, isn't it true that the reason that you changed your defense from one [of] alibi, claiming that you were never with [Ms. Doe], to one of saying that she consented to having sexual intercourse with you, and that she gave you property, is because you finally decided that there was just no other way of overcoming the Government's case against you with regard to finding your fingerprints in her home and various paper items in her home with your name on them?
>
> A. Yes.

The discussion between counsel and the trial court does not completely reveal the reasoning for the defense counsel's objections and the trial court's rulings. We think it safe to say that the court's concern was the use of the alibi notice itself for impeachment.[7] We do not, however, see an

---

**5.** That rule in full reads as follows:

(a) *Notice by defendant.* Upon written demand of the prosecutor stating the time, date, and place at which the alleged offense was committed, the defendant shall serve within 10 days or at such different time as the Court may direct, upon the prosecutor a written notice of his intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witness [witnesses] upon whom he intends to rely to establish such alibi.

(b) *Disclosure of information and witness.* Within 10 days thereafter, but in no event less than 10 days before trial, unless the Court otherwise directs, the prosecutor shall serve upon the defendant or his attorney a written notice stating the names and addresses of the witnesses upon whom the government intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witnesses to be relied on to rebut testimony of any of the defendant's alibi witnesses.

(c) *Continuing duty to disclose.* If prior to or during trial, a party learns of an additional witness whose identity, if known, should have been included in the information furnished under paragraph (a) or (b), the party shall promptly notify the other party or his attor-

ney of the existence and identity of such additional witness.

(d) *Failure to comply.* Upon the failure of either party to comply with the requirements of this Rule, the Court may exclude the testimony of any undisclosed witness offered by such party as to the defendant's absence from or presence at, the scene of the alleged offense. This Rule shall not limit the right of the defendant to testify in his own behalf.

(e) *Exceptions.* For good cause shown, the Court may grant an exception to any of the requirements of paragraphs (a) through (d) of this Rule.

(f) *Inadmissibility of withdrawn alibi.* Evidence of an intention to rely upon an alibi defense, later withdrawn, or of statements made in connection with such intention, is not admissible in any civil or criminal proceeding against the person who gave notice of the intention.

**6.** Specifically, the transcript reads:

Q. Now, sir, do you recall that in this case, the Government made a demand upon you and your defense attorney for you to—
THE COURT: Counsel come to the bench.

**7.** After the trial judge cut short the alibi notice question and called counsel to the bench, he stated: "I don't know how you can utilize that for impeachment, an alibi notice—statement by

objection made by defense counsel on the basis of Rule 12.1(f),[8] and thus we review on a "plain error" standard. *See Bundy v. United States*, 422 A.2d 765, 767 (D.C. 1980) (objection based on grounds of attorney-client privilege not one based on Rule 12.1(f)).

■ In examining appellant's contention, we begin by rejecting the bases for the appeal put forth by the appellant. Appellant incorrectly asserts that the attorney-client privilege prohibited the questions about the change in defense and hence required a mistrial. Any communication of information to an outside party destroys the privilege as to that information. *Bundy v. United States, supra*, 422 A.2d at 767 n. 4; *see United States v. Bump*, 605 F.2d 548, 551 (10th Cir.1979). Furthermore, the questions asked by the prosecutor, if not otherwise improper, fall within the permitted scope of cross-examination since they relate to credibility. "Cross-examination concerning matters pertaining to credibility must be given broad scope, especially when allegedly inconsistent prior statements are involved." *Moss v. United States*, 368 A.2d 1131, 1134 (D.C.1977); *see* 3A Wigmore, Evidence §§ 890 et seq. [Chadbourne rev. 1970]; *cf. Wright v. United States*, 508 A.2d 915, 922–23 (D.C. 1986). Accordingly, we must consider whether the questioning violated Super.Ct. Crim.R. 12.1(f), an issue suggested in the government's brief on appeal.

### III

The "alibi-defense" provisions of Super. Ct.Crim.R. 12.1 require a defendant to serve the prosecutor with written notice of his or her intention to offer an alibi defense, upon the prosecutor's written demand stating the time, date, and place at which the alleged offense was committed. *Id.* at 12.1(a). The defendant's notice must include the places where the defendant claims to have been at the time of the offense, as well as the names and addresses of the witnesses whom the defendant intends to use to establish his or her absence from the scene. *Id.* at 12.1(b). The penalty for failing to comply with the rule is, at the court's discretion, the exclusion of the undisclosed witness's testimony. *Id.* at 12.1(d), (e). The last provision of the rule is the one at issue here.

> (f) *Inadmissibility of withdrawn alibi.* Evidence of an intention to rely upon an alibi defense, later withdrawn, or of statements made in connection with such intention, is not admissible in any civil or criminal proceeding against the person who gave notice of the intention.

*Id.* at 12.1(f).[9]

Rule 12.1 is modeled upon the Federal Rule of Criminal Procedure bearing the same number. This rule and others were proposed by the Supreme Court in 1974, 62 F.R.D. 271, and modified by Congress in 1975. Subsection (f) was added by the House, but the reasons for the addition are absent from the legislative history.

counsel." After some more discussion, the prosecution said he wouldn't ask "specifically about this [alibi notice]" to which the court responded "[a]ll right."

**8.** His initial objection was: "that communication to the Government is signed by me, prepared by me.... Mr. McKoy has never signed that, or read it. I think whatever that says, any contradictions, are between me and the Court, and not Mr. McKoy." He subsequently added that everything in the alibi notice letter was not contradictory to any testimony. The reasons for the objections to the subsequent questions, though unarticulated, presumably sprang from the same general ground. In making the mis-

trial motion, he asserted that it was highly prejudicial to ask what a person decides on as a defense or how.

**9.** A modification of the rule has been proposed to clarify that evidence of the intention is not admissible against the defendant in any civil or criminal proceeding, whether or not the defendant is the subject of the proceeding. The modified version reads:

> Evidence ... is not, in any civil or criminal proceeding, admissible against the person who gave notice of the intention.

The proposed change tracks the language of the recent amendment to Fed.R.Crim.P. 12.1(f), and does not affect the issue here.

We find no federal cases amplifying Rule 12.1(f). In this court, we have had occasion to consider this subsection of the rule in a single instance when a challenged line of questioning so clearly violated the subsection that we found no need to consider it in great detail. *Bundy v. United States, supra*, 422 A.2d at 767. In the vacuum of information on Rule 12.1(f), we confront the need to address its apparent purpose in order to deal with the contention before us.

First, we must look to the purpose of Super.Ct.Crim.R. 12.1 as a whole. Beginning in the 1920's, the alibi defense attracted considerable attention as a means for criminals to escape from punishment.[10] In response, forty-one states have developed alibi notice rules. Note, *Alibi Notice Rules: The Preclusion Sanction As Procedural Default*, 51 U. CHI.L.REV. 255 (1984). Federal Rule of Criminal Procedure 12.1 is itself a product of a thirty-year debate. *Id.* at 257.

Prior to enactment of the federal rule, the Supreme Court upheld the validity of alibi notice rules in *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). The court approved such a rule on the basis that it was

> designed to enhance the search for truth in the criminal trial by insuring both the defendant and the state ample opportunity to investigate certain facts crucial to the determination of guilt or innocence.

399 U.S. at 82, 90 S.Ct. at 1896. In a subsequent case, the Court further held that the rights of discovery need to be reciprocal to pass constitutional muster:

> [T]he ends of justice will best be served by a system of liberal discovery which gives both parties the maximum possible amount of information with which to prepare their cases and thereby reduces the possibility of surprise at trial.

*Wardius v. Oregon*, 412 U.S. 470, 473, 93 S.Ct. 2208, 2211, 37 L.Ed.2d 82 (1973).[11]

This court has, in the past, observed that "avoiding prejudicial surprise is one of the purposes served by the alibi notice rule," *Beynum v. United States*, 480 A.2d 698, 705 n. 13 (D.C.1984), and that "such rules serve the important purpose of preventing unfair surprise to the prosecution and obviating the need for a continuance which arises when one side introduces unexpected testimony at trial." *Clark v. United States*, 396 A.2d 997, 999 (D.C.1979).

In short, Rule 12.1 is intended to act as a specific discovery rule[12] concerning the notice of alibi. Rule 12.1(f) apparently reflects the concern that the defendant not be harmed by this exception to the general concept that a defendant need not commit his or her defense to a particular course until the government has presented its entire case, so that the defense in no way aids the prosecution in its presentation. If the defendant could not freely withdraw an alibi defense, "the deprivation of flexibility,

---

**10.** The alibi defense presents a singular problem for several reasons.

These include: (1) alibi is a "hip pocket" defense, easily prepared for introduction in the final hours of trial and therefore more likely to catch the prosecutor by surprise; (2) a false alibi defense will be based on perjured testimony by third parties, which can be readily discouraged by affording the prosecution an opportunity to prepare for their testimony; (3) alibi requires an independent investigation by the prosecutor, and the failure to facilitate that investigation before trial will often necessitate a continuance during trial, and (4) alibi is the type of defense which will lead the prosecution to dismiss the charges if it determines from its pretrial investigation that the alibi witnesses are not lying.

LAFAVE & ISRAEL, CRIMINAL PROCEDURE § 19.4(b), at 743 (1982).

**11.** Neither the Florida nor the Oregon statute had a provision equivalent to Rule 12.1(f).

**12.** The alibi defense provision is but the oldest and most prevalent of a number of different types of procedural requirements facilitating pretrial discovery in criminal cases. Criminal systems may be found in this country which require pretrial notice of insanity and related defenses, the general nature of all defenses to be raised at trial, witness lists, witness statements, documents and tangible objects, and scientific reports. *See generally,* LAFAVE & ISRAEL, CRIMINAL PROCEDURE § 19.4 (1982) ("Pretrial Discovery For The Prosecution").

with the result that the defendant is forced to answer the government's case before it is presented, could be constitutionally suspect under traditional concepts of due process." Allis, *Limitations On Prosecutorial Discovery Of The Defense Case In Federal Courts: The Shield Of Confidentiality*, 50 S. CAL.L.REV. 461, 466 (1977). The Supreme Court saw no need to rule on this issue in *Williams v. Florida, supra.*[13]

This conception of Rule 12.1(f) is further clarified when read along with Super.Ct. Crim.R. 12.2, which requires pretrial notice of any insanity defense or expert testimony on defendant's mental condition. Rule 12.-2(e), added by amendment to the federal rule in 1983 and to our corresponding rule in 1985[14] offers the same kind of protection to the defendant as does 12.1(f).

New subdivision (e), generally consistent with the protection afforded in rule 12.1(f) with respect to notice of alibi, ensures that the notice required under subdivision (b) will not deprive the defendant of an opportunity later to elect not to utilize any expert testimony. This provision is consistent with *Williams v. Florida*, 399 U.S. 78, [90 S.Ct. 1893, 26 L.Ed.2d 446] (1970), holding the privilege against self-incrimination is not violated by requiring the defendant to give notice of a defense where the defendant retains the "unfettered choice" of abandoning the defense.

Advisory Committee Note—1983, Federal Rules of Criminal Procedure 12.2. *Cf.* Super.Ct.Crim.R. 11(e)(4) (inadmissibility of withdrawn plea or plea bargain).

In this context, subsection (f) must be read as a protection for the defendant that neither expands nor contracts the protection afforded prior to the adoption of an alibi notice rule. Therefore, if we can say that the government's line of questioning would have been possible absent appellant's notice of alibi and its subsequent withdrawal, then we must conclude that the prosecutor's questions did not violate Super.Ct.Crim.R. 12.1(f).

■ The government argues that the questions could be based on appellant's statements to the police at arrest, the introduction of the proposed defense witnesses to the court and jury, and the statements

---

**13.** The court observed that "[n]othing in such a [alibi notice] rule requires the defendant to rely on an alibi or prevents him from abandoning the defense; these matters are left to his unfettered choice." Then in an extended footnote, it further dealt with the point:

> Petitioner's apparent suggestion to the contrary is simply not borne out by the facts of this case. The mere requirement that petitioner disclose in advance his intent to rely on an alibi in no way "fixed" his defense as to that point in time. The suggestion that the State, by referring to petitioner's proposed alibi in opening or closing statements, might have "compelled" him to follow through with the defense in order to avoid an unfavorable inference is a hypothetical totally without support in this record. The first reference to the alibi came from petitioner's own attorney in his opening remarks; the State's response did not come until after the defense had finished direct examination of Mrs. Scotty. Petitioner appears to raise this issue as a possible defect in alibi-notice requirements in general, without seriously suggesting that his choice of defense at trial in this case would have been different but for his prior compliance with the rule. Indeed, in his Motion for a Protec-

> tive Order, petitioner freely disclosed his intent to rely on an alibi; his only objection was to the further requirement that he disclose the nature of the alibi and the name of the witness. On these facts, then, we simply are not confronted with the question of whether a defendant can be compelled in advance of trial to select a defense from which he can no longer deviate. We do not mean to suggest, though, that such a procedure must necessarily raise serious constitutional problems. *See State ex rel. Simos v. Burke*, 41 Wis.2d 129, 137, 163 N.W.2d 177, 181 (1968) ("[i]f we are discussing the right of a defendant to defer until the moment of his testifying the election between alternative and inconsistent alibis, we have left the concept of the trial as a search for truth far behind").

*Williams v. Florida, supra*, 399 U.S. at 84–85 n. 15, 90 S.Ct. at 1897 n. 15.

**14.** That subsection reads:

> *Inadmissibility of withdrawn intention.* Evidence of an intention as to which notice was given under paragraphs (a) or (b), later withdrawn, is not admissible in any civil or criminal proceeding against the person who gave notice of the intention.

by defense counsel in open court when requesting a continuance. We think this assertion is substantially correct.

The first of the challenged cross-examination questions referred to four witnesses who had in fact been introduced by appellant to the jury, an obvious indication that he planned to call them in the case. The nature of their testimony could be fairly anticipated in light of appellant's statements to the police.

The second question regarding the timing of the change of defense is likewise explainable since the government learned of the switch in defense strategies and its precise timing when defense counsel, in open court, was forced to ask for a continuance and reveal its basis. Such a revelation was made necessary by appellant's disclosure of his change of plans at such a late date; that he did not trust his attorney or had other reasons for the last-minute switch fails to justify such behavior so as to preclude the government's making comment on it. This is a far cry from a simple process of filing a notice under Rule 12.1 and subsequently advising the government, as an independent unforced act, of its withdrawal.

Lastly, the final statement could be based on the original assertions in appellant's interrogation by the police and the revelation of the change in the motion for continuance. In short, particularly because of the detailed nature of the information in appellant's statements on arrest, neither this final question of the prosecutor, nor the prior two questions, were dependent on information unique to the notice of alibi or "statements made in connection with such intention."

Even assuming that in some regard parts of one or another of the questions were proscribed by Rule 12.1(f), our review here is limited to determining whether "plain error" occurred. *Bundy v. United States, supra,* 422 A.2d at 767. A plain error is one so clearly prejudicial to substantial rights that it jeopardizes the very fairness and integrity of the trial. *Watts v. United States,* 362 A.2d 706 (D.C.1976) (en banc). Here, with the change in appellant's explanation of events already presented to the jury through his prior statement to the police, the questioning could not rise to the level of plain error so defined.

*Affirmed.*