UNITED STATES of America, Plaintiff-Appellee,

v.

Dave BUMP, Defendant-Appellant.

No. 77–1841.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Jan. 24, 1979.

Decided Sept. 20, 1979.

Philip Hornbein, Jr., Denver, Colo., for defendant-appellant.

Nancy E. Rice, Asst. U. S. Atty., Denver, Colo. (Joseph F. Dolan, U. S. Atty., Edward W. Nottingham, Asst. U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

Before SETH, Chief Judge, and BARRETT and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Dave Bump appeals his conviction by a jury for conspiracy to import marijuana in violation of 21 U.S.C. §§ 963, 952. The convictions of Irving Goldfien, Forrest Smith and Richard Haddad, tried separately as coconspirators, are not in question here. Another alleged coconspirator, Jose Quintero, was apparently tried in Mexico.

Bump testified on his own behalf at the trial. The only issues in the appeal relate to the attorney-client privilege and arise out of questions asked during cross-examination of Bump.

Evidence showed William Coller, a Drug Enforcement Administration agent, and Joseph Plante, an informer for the Royal Canadian Mounted Police, successfully infiltrated the marijuana smuggling operation in which Bump is alleged to have participated. Haddad enlisted Coller and Plante as pilots to fly marijuana from Culiacan, Mexico to the Alamosa, Colorado area. Meetings with various of the coconspirators were held on October 20 and 21, 1976, money was given to the agents, and a trip was made by Coller and Quintero to Mexico on October 22, where they obtained marijuana. The activity terminated when, instead of flying to the United States, Coller changed course surreptitiously and flew instead to Mazatlan, Mexico, where Quintero was arrested.

Bump does not challenge the government's evidence proving the existence of a conspiracy, but denies any participation in the conspiracy. Testifying in his own defense, Bump stated he was in the business of selling Indian jewelry for a bank in Albuquerque, New Mexico, where he lived; business necessitated a trip to St. Louis, Missouri on October 22, 1976, for two days; he routed his trip through Denver for October 20, instead of taking a direct flight from Albuquerque to St. Louis, because several friends, among whom were Haddad, Smith, and Goldfien, would be meeting to-

gether in Denver for a poker game. Other testimony at trial supports that in fact a poker game did take place the evening of October 20 until approximately 6:30 a. m. October 21. Agent Coller testified that Bump was present during some of the meetings on those days with the coconspirators, was introduced as a member of the organization, and participated in some of the planning. Bump admitted his friendship with Haddad, Smith, and Goldfien, and his presence with them at various times during this period, but denied any knowledge of the conspiracy or participation in the planning meetings.

In preparing his defense, Bump requested discovery under Fed.R.Crim.P. 16(a); the government then exercised its right to reciprocal discovery under Rule 16(b). In response, Bump's attorney told the prosecution the defense intended to introduce evidence that Bump was in St. Louis during part of the time at issue, including his mother's BankAmericard record showing purchase of an airline ticket to St. Louis and registration records at a Ramada Inn in St. Louis for two days beginning October 22, 1976. His mother's BankAmericard account actually showed no charge for such a ticket, and no records were produced showing his registration in the St. Louis motel. Bump testified on direct examination that he flew to St. Louis October 22, and stayed two days, but he made no reference to the BankAmericard or Ramada Inn registration records. On cross-examination the prosecution pursued the matter of the BankAmericard and the hotel registration as follows:

Q You paid for that [airline flight] with your mother's credit card?

A I can't remember if I paid for it with her card or cash.

Q Have you ever told anyone you paid for it with your mother's BankAmericard?

MR. McCARTY: Object, Your Honor, it's argumentative.

THE COURT: You may answer.

A Well, I certainly have flown on my mother's credit card before. I don't know who I have told and who I haven't.

Q I'm not sure that answers my question. I just want to get it clear in my own mind. Have you ever told anybody in connection with this case that you used your mother's BankAmericard on this trip?

A Yes, sir.

MR. McCARTY: I'm going to object to that, Your Honor. It is invading the attorney-client privilege.

THE COURT: Overruled.

Q You have?

A Yes, sir, I probably have.

\* \* \* \* \* \*

Q You stayed in St. Louis two days?

A Yes, sir.

Q Where at?

A The Ramada Inn, and it was a residential—it wasn't at the airport.

Q Did you check with the Ramada Inn to see if they had a record of your staying there?

A Yes, sir.

Q And they did not, did they?

A It is not the Ramada Inn any more.

Q Well, whatever that hotel is, they did not have a record of your staying there?

A That's right.

On appeal, Bump claims this questioning constituted an impermissible intrusion into the confidential relationship between attorney and client, deprived him of effective assistance of counsel, and, because of the government's improper use of information revealed under Rule 16(b), forced him to be a witness against himself in violation of his Fifth Amendment rights.

■ Bump's contentions are all premised upon the attorney-client privilege protecting his statements to his attorney concerning use of his mother's BankAmericard and the Ramada Inn registration records. An important element of the lawyer-client privilege is a showing that the communication was meant to be kept secret.

When a matter is communicated to the lawyer with the intention or understanding it is to be repeated to another, the content of the statement is not within the privilege. The leading case for this proposition is *Wilcoxon v. United States*, 231 F.2d 384 (10th Cir.), *cert. denied*, 351 U.S. 943, 76 S.Ct. 834, 100 L.Ed. 1469 (1956) in which the court said,

> In directing his attorney to propound the questions to the witness, it was the intent and purpose of appellant that the substance of such directions would be immediately repeated to the witness in the form of questions. It is manifest that in such circumstances, the directing of the attorney to ask the questions did not constitute a confidential communication within the purview of the general protective rule.

231 F.2d at 386. *See also United States v. Tellier*, 255 F.2d 441 (2d Cir. 1958). Even if the privilege exists it is waived when the client voluntarily reveals the information to another or his attorney does so with his consent. *See e. g., In the Matter of Grand Jury Subpoena*, 438 F.Supp. 1176 (S.D.N.Y. 1977); McCormick's Handbook of the Law of Evidence § 93 (2d ed. 1972).

■ In this case Bump's attorney gave information acquired from his client to the government. Bump makes no showing that the lawyer's disclosures were without his consent, or that he communicated the information to the attorney with the intention it be kept secret. The burden of proving a communication is privileged is upon the person asserting the privilege. *E. g., United States v. Ponder*, 475 F.2d 37 (5th Cir. 1973). Therefore, we can find no violation of the attorney-client privilege unless we say either Fed.R.Crim.P. 16(b) unlawfully compelled the disclosure in violation of the attorney-client privilege, or that disclosures made under Rule 16(b) may not be used against a defendant in the circumstances of this case.

■ In analyzing the validity of Rule 16(b) we first have a conceptual difficulty. Rule 16(b) requires disclosure only of documents and tangible objects; statements made by the defendant to his attorney are specifically declared to be nondiscoverable.[1] What was revealed by Bump's attorney was that documents purportedly existed showing Bump charged an airline ticket to his mother's BankAmericard and that he was registered at a Ramada Inn in St. Louis. The Ramada registration record did not exist or was not found; the BankAmericard record proved the contrary of the defendant's assertion. Disclosing the documents, or alleged documents, does not of itself require disclosure of the communication as to what they tend to prove. Nevertheless, for purposes of this case, we assume that in fulfilling the discovery duty to reveal records intended to be relied upon, the attorney necessarily had to disclose his client's statements to him concerning what the records were expected to prove.

Unquestionably, the required disclosures under Rule 16(b) represent a step away from prior practice in criminal cases, and force defendants invoking the rule to give the prosecutors information they can use to prepare against the defendant's case. While the information so revealed will normally be favorable to defendant, as he in-

1. Fed.R.Crim.P. 16(b) in part provides,

(1) Information Subject to Disclosure.

(A) Documents and Tangible Objects. If the defendant requests disclosure under subdivision (a)(1)(C) or (D) of this rule, upon compliance with such request by the government, the defendant, on request of the government, shall permit the government to inspect and copy or photograph books, papers, documents, photographs, tangible objects, or copies or portions thereof, which are within the possession, custody, or control of the defendant and which the defendant intends to introduce as evidence in chief at the trial.

(2) Information Not Subject to Disclosure. Except as to scientific or medical reports, this subdivision does not authorize the discovery or inspection of reports, memoranda, or other internal defense documents made by the defendant, or his attorneys or agents in connection with the investigation or defense of the case, or of statements made by the defendant, or by government or defense witnesses, or by prospective government or defense witnesses, to the defendant, his agents or attorneys.

tends to use it in presenting his defense, in some cases, as here, it may help convict him. This, he argues, violates his rights against self-incrimination and to effective assistance of counsel. It has been pointed out many times, however, that the prosecutor's right of discovery arises only after the defendant seeks discovery of similar evidence from the government, and the forced disclosure applies only to evidence defendant intends to produce at trial. *See United States v. Nobles,* 422 U.S. 225, 235, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). The Supreme Court seems never to have passed upon the arguments presented here in the direct context of Rule 16. That rule has been mentioned by the Supreme Court in several opinions, however, and never with any suggestion of constitutional infirmity. *See e. g., United States v. Nobles, supra.* The same arguments raised here have been considered and rejected by the Court in *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), which upheld a state rule similar to Fed.R.Crim.P. 12.1, requiring disclosure by a defendant of an intention to rely upon an alibi defense and to reveal alibi witnesses' names. Therefore, we find Rule 16 is not invalid as an unlawful interference with defendant's constitutional rights against self-incrimination or to effective assistance of counsel.

Another argument is made that Rule 16(b) was not intended to allow the prosecution to use information revealed under the rule unless and until defendant uses it in presenting a defense. Since the rule does not say this in express terms, the argument must be that Rule 16 provides by implication what Fed.R.Crim.P. 12.1(f) states expressly.[2] Concerning this argument, we note first that Rule 16 was amended at the same time Rule 12.1 was adopted in 1974; arguably Congress would have added lan-

guage to Rule 16 similar to that placed in Rule 12.1 had it intended such a result. The Supreme Court has also held that Rule 16 applies to pretrial discovery only, and was not intended to limit the court's power to make orders at trial. *United States v. Nobles,* 422 U.S. 225, 235, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).

While we have found no case in which the issue has arisen exactly as it has here,[3] we do not have to decide whether the government could use such evidence in its case-in-chief. The government here did not attempt to use the information for any purpose other than impeachment of defendant after he took the stand and testified in his own defense that he flew to St. Louis and stayed there two days. A defendant may not use the Fifth Amendment to restrict cross-examination on matters reasonably related to those brought out on his direct examination. *See, e. g., McGautha v. California,* 402 U.S. 183, 215, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971). *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) held prosecutors could impeach a defendant who took the witness stand with statements made by defendant under circumstances in which his constitutional rights were violated and although those statements could not be introduced into evidence in the prosecution's case-in-chief. Bump's case here is certainly no stronger than that of the defendant in *Harris v. New York.*

The decision of the trial court is affirmed.

---

2. That provision reads as follows:

   (f) Inadmissibility of Withdrawn Alibi. Evidence of an intention to rely upon an alibi defense, later withdrawn, or of statements made in connection with such intention, is not admissible in any civil or criminal proceeding against the person who gave notice of the intention.

3. *But compare Bowman Dairy Co. v. United States,* 341 U.S. 214, 219, 71 S.Ct. 675, 678, 95 L.Ed. 879 (1951), ("It would be strange indeed if the defendant discovered some evidence by the use of Rule 16 which the Government *was not going to introduce* and yet could not require its production by Rule 17(c)." Emphasis added.)