NUTMEG INSURANCE CO.

v.

ATWELL, VOGEL & STERLING, A DIVISION OF EQUIFAX SERVICES, INC., et al.

Civ. A. No. 85–3154.

United States District Court, W.D. Louisiana, Lafayette–Opelousas Division.

Jan. 20, 1988.

Supplemental Order Jan. 29, 1988.

Order on Motion for Partial Reconsideration Feb. 2, 1988.

---

E. Gregory Voorhies, Voorhies & Labbe, Lafayette, La.; Thomas S. Felker, Tom H. Foulds, and Stephen P. Ryder, Seattle, Wash., for Nutmeg Insurance Co.

Rutledge C. Clement, Jr., Amelia Williams Koch, Taryn S. Southon, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for Atwell, Vogel & Sterling, a division of Equifax Services, Inc.

Patrick J. Briney, Jeansonne & Briney, Lafayette, La., for Hartford Fire Insurance Co., Nutmeg Insurance Co., and Twin City Fire Insurance Co.

Nicholas J. Sigur, Gachassin, Hunter & Sigur, Lafayette, La., for Louisiana Companies, Inc.

## ORDER

MILDRED E. METHVIN, United States Magistrate.

Defendant Equifax Services, Inc. (Equifax) seeks to compel the deposition testimo-

ny and the production of documents by Richard S. Harrington, the designated representative of Nutmeg Insurance Company (Nutmeg) and Hartford Fire Insurance Company (Hartford). Equifax also seeks the reasonable fees and expenses incurred in bringing the motion, as well as the round trip travel and lodging expenses incurred in traveling to Hartford, Connecticut for the deposition of Harrington pursuant to F.R. C.P. Rule 37 and Rule 11. Defendant Louisiana Companies (Louisiana) filed a separate motion to compel Harrington's testimony and also seeks the costs involved in the deposition and in filing the motion. Equifax further seeks to compel Nutmeg to respond more fully to interrogatories and to a request for the production of documents.

Nutmeg filed a motion to terminate the examination of Harrington which set forth its opposition to Equifax's motion to compel. Equifax opposes Nutmeg's motion to terminate on the same grounds that support Equifax's motion to compel. In view of the overlapping nature of the two motions, all information provided to this court regarding the deposition of Harrington will be considered in reaching a decision in this matter.

## BACKGROUND

This action was brought by Nutmeg to recover money it paid to cover a fire loss by its insured, Affiliated Foods, Inc. (Affiliated) following a fire in November, 1984. Nutmeg contends that it would not have issued coverage if it had been informed that Affiliated's property was located in Broussard rather than in Lafayette. Broussard had a National Board of Firewriters' rating of 8 rather than one of 3 for Lafayette. The fire began in the office section of Affiliated's warehouse, but spread to the grocery warehouse section when the fire department's water supply became depleted.

Several firms acted as agents or brokers in the acquisition of the Nutmeg insurance policy. Nutmeg's own agent hired Equifax to perform an inspection of the Affiliated facility after the insurance coverage was effective, but before its first renewal. The Equifax inspector, Walter L. "Butch" Monday allegedly reported that the property was located in Lafayette rather than Broussard. There are allegations that another insurance broker, Swett and Crawford, also represented to Nutmeg or its agents that the property was located in Lafayette. Nutmeg contends that but for these misrepresentations, it would not have issued coverage.

The discovery dispute at issue also involves a subplot in the case. Defendant Equifax contends that it should be defended in this suit by Twin City Fire Insurance Company (Twin City) under a policy which was in effect at the time of Equifax's inspection and the fire loss, but which expired shortly before Equifax became aware of the law suit. Twin City has declined the defense, contending that because the policy expired without any claim being made during the policy term, Equifax had no coverage. Equifax argues that Twin City and plaintiff Nutmeg are both wholly-owned subsidiaries of the Hartford Insurance Group, and that Nutmeg told Twin City that it was suing Equifax in November, 1985. Although the suit was filed at that time, Equifax was not served with the suit until after the expiration of the Twin City policy period.

## THE DISPUTE

Equifax subpoenaed Harrington to appear for an oral deposition. Harrington is a Hartford employee, fact witness, and the designated corporate representative of Nutmeg for its Rule 30(b)(6) deposition. Because of objections raised by plaintiff's counsel during the course of the deposition, the deposition was suspended, and Equifax moved to compel. Plaintiff, relying on F.R. C.P. Rule 26(b)(3) and *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), contends that Equifax's questioning impermissibly impinged upon protected work-product of plaintiff's attorney.

Equifax noticed the Rule 30(b)(6) corporate depositions of Nutmeg, Hartford, and Twin City, seeking, among other matters, information regarding the factual back-

ground of "the decision by Nutmeg, including the reasons and basis for the decision, to sue" Equifax and its insurors.[1] Equifax contends that the information is relevant and discoverable with respect to Equifax's claim against members of the Hartford group that Nutmeg improperly joined with Hartford, Twin City, and Media/Professional Insurance, Inc. to conceal the existence of the Nutmeg suit against Equifax until after it believed Equifax's errors and omissions coverage by Twin City had expired. Nutmeg and Hartford designated Harrington, the Division Manager, Property Claim Division of the Hartford Claim Department, as corporate representative with respect to this inquiry. In addition, the deposition of Mr. Harrington was individually noticed by Equifax.

Counsel for plaintiff, Mr. Ryder, objected to Equifax's efforts to establish the basis for Nutmeg's suit against Twin City on the basis of attorney-client privilege. Ryder stated:

> The decision to sue these carriers was made with and upon the recommendations of counsel and I think that's about as much as you are going to get because we're not going into any specific reasons why counsel recommended that.[2]

Ryder raised the same objection when counsel for Equifax sought to discover the substance of conversations held among Nutmeg's staff regarding the filing of the suit.[3] Ryder stated:

> You are in an area, counsel, that involves the representation of advice of counsel. On that basis, therefore, I will let the witness answer the question to the best of his ability. But in so doing, he should not repeat, in describing these conversations that took place among his staff, any advice of counsel or the reasons, any reasons of counsel in reaching

a decision. But other than that, he can testify as to what was said....[4]

Ryder objected again on the basis of attorney-client privilege when Equifax sought to discover whether Nutmeg would have insured the Affiliated Foods Warehouse in Louisiana if it had known that the property was rated NB8 not NB3.[5] Counsel for Equifax asked Harrington:

> Do you have a belief as to whether or not Nutmeg or Hartford would have insured the Affiliated Foods property?

Ryder instructed Harrington not to answer and objected on the basis of attorney-client privilege. Counsel for Equifax sought to elicit this same information three times. Ryder stated:

> That's the third time you've asked that question. I have directed the witness not to answer for the reason he's indicated because any knowledge he has comes through counsel. I will again direct him not to answer that question and I will ask you as a gentleman to cease asking questions, pausing with another question, then coming back to the same objectionable matter.[6]

Finally, counsel for Equifax asked:

> Do you know on what basis the allegation is made in that second supplemental and amended complaint that my client Equifax acted with gross negligence?

Mr. Ryder objected:

> Just a moment. I object to the form of that question and also object on the basis that it would invade the attorney-client privilege if information that this particular witness has, has as its sole source the reporting attorneys on this file. With that direction you can answer it or not answer depending on the source of the knowledge.[7]

1. Memorandum by Equifax in Support of Motion to Compel and for Sanctions, p. 3.

2. Deposition of Richard Harrington, October 12, 1987, at p. 22.

3. Deposition of Richard Harrington, October 12, 1987, at pp. 34–35.

4. *Id.* at 35.

5. Deposition of Richard Harrington, October 14, 1987, p. 99.

6. Deposition of Richard Harrington, October 14, 1987, pp. 101–102.

7. Deposition of Richard Harrington, October 14, 1987, p. 107.

Harrington stated that his sole source of information was Tom Felker, attorney for Nutmeg. Although Harrington authorized Felker to make the allegation of gross negligence against Equifax, he stated that he did not obtain any other independent facts or information regarding the allegation.[8]

Harrington testified that he had knowledge from counsel concerning the allegation by Nutmeg that an inspection report was relied on in making an underwriting decision, but that he had no independent source of knowledge. Ryder instructed Harrington not to answer several times, and then Ryder terminated the deposition.[9]

Equifax contends that Ryder's instructions to Harrington not to answer and his decision to terminate Harrington's deposition were improper.

### ANALYSIS

Under F.R.C.P. Rule 30(b)(6), an organization named in a Rule 30(b)(6) notice of deposition "shall designate one or more officers, directors, or managing agents, ... and may set forth, for each person designated, the matters on which it will testify." F.R.C.P. Rule 30(b)(6). The rule further states:

> The persons that are designated shall testify as to matters known or reasonably available to the organization.

Nutmeg chose Harrington to respond to the subject matter stated in the notice of deposition. Nutmeg chose its representative with knowledge that he would be questioned as to the basis of Nutmeg's suit against Twin City. Nutmeg could have sought a protective order or moved to quash Harrington's deposition. Since Nutmeg did neither, its representative has the duty to answer questions on behalf of the organization to the extent that the information sought is "known to the organization or reasonably available to it."

Even so, I will consider Nutmeg's claim of privilege in the context of F.R.C.P. Rule 30(c), which provides, in part:

**8.** *Id.* at p. 108.

Evidence objected to *shall be taken* subject to objection. (Emphasis supplied).

As a general rule, instructions not to answer questions at a deposition are improper. The only exceptions are questions which seek information in the form of trade secrets and privileged information. Even in the case of questions of this type, it is the duty of the attorney instructing the witness not to answer to immediately seek a protective order. *International Union of Electrical, Radio and Machine Workers, AFL–CIO, et al v. Westinghouse Electric Corporation*, 91 F.R.D. 277 (D.D.C., 1981); *American Hangar, Inc. v. Basic Line, Inc.*, 105 F.R.D. 173 (D.Mass.1985).

The touchtone for determining the existence of such an exception to Rule 30(c) should be the potential harm from disclosure, and in the absence of a showing of some serious harm likely to result from responding to any given question, the policies behind Rule 30(c) require the answers to be given. *Westinghouse*, supra, 91 F.R. D. at 280. Even in the case of an instruction not to answer based on privilege, the party who instructs the witness not to answer should *immediately* seek a protective order.

Counsel for Nutmeg did not file a motion pursuant to Rule 30(d), either in the district where the deposition was being taken or in the court where the action is pending. Rather, counsel unilaterally directed the witness not to answer and left it to defendant Equifax to bring the matter before the court in the form of a motion for sanctions. This course of conduct was improper and in violation of the Federal Rules of Civil Procedure.

Although counsel for Nutmeg asserted the attorney-client privilege during the deposition, Nutmeg relies on the work-product doctrine to support its motion to terminate Harrington's deposition. F.R.C.P. Rule 26(b)(3) requires that a party seeking discovery of documents and tangible things prepared in anticipation of litigation or for trial must show that it has substantial need

**9.** *Id.* at pp. 109–111.

of the materials in the preparation of its case, and that it is unable without undue hardship to obtain the substantial equivalent of the materials by other means. Since Rule 26(b)(3) by its terms applies only to discovery of documents and other tangible things, when discovery of work-product is sought through questions propounded at the taking of depositions, one must refer to the principles enunciated in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed.2d 451 (1947); 4 Moore's Federal Practice, § 26.64(1) at 348–351. The Court in *Hickman* held that the substance of oral statements made by witnesses to a party's attorney could not be discovered without a showing by the party seeking discovery of the necessity for the information and undue hardship which would result from a denial of the discovery. *Hickman, supra,* at 509, 67 S.Ct. at 392–93. The court stated, however:

> Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had ... Were production of written statements and documents to be precluded under such circumstances, the liberal ideals of the deposition-discovery portions of the Federal Rules of Civil Procedure would be stripped of much of their meaning.

*Hickman, supra,* at 511–12, 67 S.Ct. at 394.

The Fifth Circuit in *In Re International Systems and Controls Corp., etc,* 693 F.2d 1235 (5th Cir.1982), addressed the work-product immunity issue and stated: "We know that the work-product immunity protects only the documents themselves and not the underlying facts." *Id.* at 1240. The court noted that it was improper for defendants' attorneys to prevent plaintiff from questioning a deponent about facts involving a special review conducted by the company. *Id.* at p. 1240, n. 7.

■ A party may not simply claim that materials have been prepared in anticipation of litigation. It must specify the basis for the objection and the items of work-product involved. 4 Moore's Federal Practice, § 26.64[2], at 354.

■ In the instant case, Nutmeg has broadly asserted that Harrington's knowledge of the facts which underlie the basis for the law suit and of the opinions of Nutmeg attorneys are both immune from disclosure because Harrington obtained all of his information from reports prepared by Nutmeg attorneys. As noted in Wright & Miller:

> The courts have consistently held that the work-product concept furnishes no shield against discovery, by interrogatories or by deposition, *of the facts* that the adverse party's lawyer has learned, or the persons from whom he has learned such facts, or the existence or non-existence of documents, even though the documents themselves may not be subject to discovery.

8 Wright & Miller, *Federal Practice & Procedure,* § 2023, at 194 (1970) (Emphasis supplied). No special showing is required for the discovery of such facts. *Ford v. Philips Electronics Instruments Co.,* 82 F.R.D. 359 (E.D.Penn.1979).

Nutmeg must provide discovery of the facts and opinions at issue either by designating a more qualified representative with personal knowledge, or by allowing redeposition of Harrington. In either event, the following guidelines will apply:

(1) Defendant's counsel may inquire into the substance of the witness's knowledge concerning matters relevant to the subject matter of this action regardless of whether the knowledge was at some time discussed with counsel. F.R.C.P. Rule 26(b)(1). *Baxter Travenol Laboratories v. Lemay,* 89 F.R.D. 410 (S.D.Oh.1981).

(2) Such inquiry may not, however, include questions that tend to elicit the specific questions posed to the witness by plaintiff's counsel, the generalized inquiry pursued by plaintiff's counsel, the facts to which plaintiff's counsel appeared to attach significance, or any other matter that reveals plaintiff's counsel's mental impressions concerning this case.

■ Equifax further seeks to compel production of documents listed in a subpoena duces tecum served on Harrington. Equifax states that no documents whatsoever were produced the first day of the deposition. On the second day, Ryder reviewed a three-inch stack of documents for one-and-a-half hours, despite the fact that the documents had previously been reviewed by Nutmeg's counsel, and determined that all but four pieces of paper were privileged. Nutmeg did not seek a protective order. Nutmeg argues work-product immunity in its opposition, but has failed to specifically designate which documents are work-product. The burden of proving the attorney-client or work-product privileges rests on the party claiming the privilege. A general allegation is insufficient. A clear showing must be made which sets forth the items or categories objected to and the reason for that objection. *Peat, Marwick, Mitchell & Company v. West,* 748 F.2d 540 (10th Cir.1984), *cert. denied,* 469 U.S. 1199, 105 S.Ct. 983, 83 L.Ed.2d 984 (1985); *United States v. Bump,* 605 F.2d 548 (10th Cir.1979).

■ In considering whether a proponent of the privilege is entitled to protection, the courts must place the burden of proof squarely upon the party asserting privilege. Accordingly, the proponent must provide the court with enough information to enable the court to determine privilege, and the proponent must show by affidavit that precise facts exist to support the claim of privilege.

■ A review of the documents requested by Equifax shows that several items appear to be business records maintained in the regular course of business. The work-product doctrine does not apply to such records. 4 Moore's Federal Practice, § 26.64[2] at p. 354. Nutmeg fails to show that documents for which it claims privilege were in fact prepared in anticipation for litigation or contain the mental impressions of attorneys. Thus, Equifax need make no special showing, and Nutmeg must produce the documents.

Equifax further seeks to compel Nutmeg to answer interrogatories and to respond to a request for production of documents. Nutmeg opposes this motion on the ground that it complied with Equifax's request after the motion to compel was filed. Equifax filed a supplemental motion to compel contending that the answers and documents provided by Nutmeg were insufficient. Counsel for Equifax stated that no conference pursuant to Local Rule 10.1(b) was held with counsel for Nutmeg prior to the filing of the supplemental motion due to an impending discovery deadline. Since Nutmeg had no notice of the supplemental motion nor an opportunity to respond, I will defer a decision on Equifax's motion to compel answers to interrogatories and a response to a request for production of documents until a certificate of compliance with Local Rule 10.1(b) has been submitted to this court. Counsel for Nutmeg shall respond to the supplemental motion to compel if an agreement cannot be reached.

For the foregoing reasons, IT IS HEREBY ORDERED that Equifax's motion to compel the deposition of Richard Harrington is GRANTED in accordance with the discussion above.

IT IS FURTHER ORDERED that Equifax's motion to compel Richard Harrington to comply with the subpoena duces tecum is GRANTED.

IT IS FURTHER ORDERED that Equifax's supplemental motion to compel answers to interrogatories and a response to a request for production of documents is deferred until a certificate of compliance with Local Rule 10.1(b) is supplied to the court.

IT IS FURTHER ORDERED that Equifax's motion for Rule 37 sanctions, including reasonable attorney's fees and costs incurred in bringing the motion to compel, is GRANTED, but that this sanction shall not include costs incurred in attending the deposition in Connecticut.

IT IS FURTHER ORDERED that Equifax's motion for sanctions under Rule 11 is DENIED.

IT IS FURTHER ORDERED that Nutmeg's motion to terminate the deposition of

Richard Harrington and for Rule 37 sanctions is DENIED.

IT IS FURTHER ORDERED that counsel for Equifax shall submit an affidavit of costs and fees to this court within 10 days of the date of this order.

Lafayette, Louisiana, this 19th day of January, 1988.

### SUPPLEMENTAL ORDER

The Motion by Equifax Services, Inc. to fix attorneys' fees and costs in connection with the Motion to Compel, arising from the termination of the Rule 30(b)(6) discovery deposition of Nutmeg Insurance Co. and Richard F. Harrington, having been duly considered,

■ IT IS ORDERED BY THE COURT that, for good and sufficient cause, the Court hereby assesses attorneys' fees and costs against Nutmeg Insurance Co. in the amount of $3,117.50 in legal fees and $849.25 in reimbursable expenses, for a total of $3,966.75.

### ORDER ON MOTION FOR PARTIAL RECONSIDERATION

Upon due consideration of the Motion by Equifax Services, Inc., for Partial Reconsideration as to the prior Order wherein travel expenses were denied,

■ IT IS HEREBY ORDERED BY THE COURT that, in addition to the relief previously granted to Equifax Services, Inc. in the Order filed on January 20, 1988, Equifax shall be reimbursed by Nutmeg Insurance Co. for all reasonable travel and lodging expenses incurred in returning to Hartford, Connecticut, for the continuation and conclusion of the deposition of Richard F. Harrington.