## IN THE UNITED STATES COURT OF APPEALS
### FOR THE FIFTH CIRCUIT

No. 16-20314

United States Court of Appeals
Fifth Circuit

**FILED**

May 4, 2017

Lyle W. Cayce
Clerk

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

      Plaintiff - Appellant

v.

BDO USA, L.L.P.,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and KING and DENNIS, Circuit Judges.

CARL E. STEWART, Chief Judge:

During the course of an employment discrimination investigation, the Equal Employment Opportunity Commission ("EEOC") brought a subpoena enforcement action against BDO USA, L.L.P. ("BDO") in federal district court. The EEOC sought production of information relating to the investigation and asserted that BDO's privilege log failed to establish that the attorney-client privilege protected the company's withheld documents. The district court held that the log was sufficient and also granted BDO's request for a protective order. For the reasons that follow, we VACATE and REMAND.

## I. BACKGROUND

BDO, a financial and consulting services firm, hired Hang Bower as a Human Resources ("HR") Manager in 2007. Bower, an Asian-American female, was eventually promoted to Chief Human Resources Officer, the company's highest-ranking HR position. While at BDO, Bower was responsible for investigating discrimination complaints and communicated with both in-house and outside counsel. Bower resigned from her employment with BDO on January 15, 2014.

On July 9, 2014, Bower filed a charge with the EEOC, alleging that BDO violated Title VII and the Equal Pay Act by subjecting her and other female employees to gender discrimination, retaliation, and a hostile work environment. Bower claimed, *inter alia*, that: (1) as a result of her efforts to assure compliance with company policies, BDO removed her from leadership meetings, decreased her job responsibilities, reprimanded her, and ordered her to stop investigating certain employees; (2) in retaliation for her "expressed determination" to investigate male managers and a male partner, she was stripped of her investigatory authority and removed from the Chief Compliance Officer position; (3) top corporate management shielded a male manager accused of discrimination and blocked an appropriate investigation; (4) BDO fired or constructively discharged female employees who complained about mistreatment; and (5) BDO discriminated against non-white employees. On August 18, 2014, BDO filed a position statement in response to Bower's charge, providing additional information, denying the allegations, and arguing that the charge should be dismissed for lack of probable cause.

Between October 2014 and June 2015, the EEOC issued three Requests for Information ("RFIs") to BDO, seeking details related to the individual and class-wide claims in Bower's charge. In December 2014, BDO filed another position statement that outlined BDO's investigation policy and rejected

Bower's allegations that the company blocked her attempts to investigate discrimination claims. BDO, however, objected to providing other information it believed was "far beyond the scope of Bower's individual charge." BDO also alleged that the EEOC was eliciting—and Bower was revealing—attorney-client privileged communications between Bower and BDO's in-house and outside counsel. In June 2015, BDO stated that it could not provide any additional information until the matter was "transferred to a new investigator who ha[d] not been tainted by reviewing, or eliciting, privileged information."

On July 14, 2015, the EEOC issued a subpoena to BDO, seeking documents and information relating to the investigation. In response, BDO provided some, but not all, of the requested information and created a privilege log cataloging withheld documents as to which it asserted attorney-client privilege. The 278 entries in the log's final version referenced "confidential" emails, memoranda, and other documents, and included communications between (1) Bower and in-house and outside counsel, (2) other BDO employees and in-house and outside counsel, (3) non-attorney employees with counsel courtesy copied, and (4) non-attorney employees regarding legal advice (but not involving any attorneys).

On December 10, 2015, the EEOC filed a subpoena enforcement action in federal district court. According to the EEOC, BDO's refusal to comply with the subpoena had "delayed and hampered the investigation," and the privilege log BDO submitted contained various deficiencies: certain entries "lack[ed] sufficient detail and specificity," were "simply incomplete," and/or appeared to reference communications that were not exchanged with or copied to an attorney, or that appeared only to courtesy copy counsel. On February 4, 2016, BDO filed its response, which included a request for a protective order enjoining the EEOC from questioning Bower and BDO employees regarding their conversations with BDO's counsel, and requiring the EEOC to return or

destroy evidence of witness interviews and other documents that memorialized the privileged conversations.

On February 9, 2016, the magistrate judge presided over the show cause hearing. She rejected the EEOC's contention that communications BDO claimed were privileged were not protected and stated that the EEOC had not "made a sufficient showing" that the privilege log reflected "an improperly claimed privilege." Ultimately, the magistrate judge denied the EEOC's request to enforce the subpoena and for an in camera review of the documents, explaining: "I am not going to look through 278 documents. I decline to do that. The privilege log seems adequate." The magistrate judge also granted BDO the protective relief it requested, stating that it was "not Ms. Bower's job to decide what's attorney-client [privilege]" and that "anything that comes out of [BDO's] lawyer's mouth is legal advice."

The EEOC filed objections to the magistrate judge's order in the district court, arguing that the decision was based "on incorrect interpretations of the facts and the applicable law." The EEOC appended to its objections Bower's declaration, which stated, *inter alia*, that many of the communications she exchanged with BDO's counsel were for the purpose of seeking or imparting business, not legal, advice regarding officer investigations and how to carry out her HR duties. Similarly, Bower maintained that emails exchanged between her and other non-attorneys pertaining to these investigations were made for the primary purpose of conveying business directives or factual information. Bower further claimed that, in order to protect communications from disclosure in future legal proceedings, BDO required her to forward to or courtesy copy in-house counsel on virtually all communications pertaining to employee investigations and to include in HR-related emails a false designation that the communication was prepared "at the request of legal counsel."

No. 16-20314

BDO filed an opposition to the EEOC's objections, arguing that they should be overruled and that the district court did not have discretion to consider Bower's declaration. On March 21, 2016, the district court summarily affirmed the magistrate judge's order. The EEOC timely appealed, seeking that (1) the question of whether the attorney-client privilege is available to the withheld documents on BDO's privilege log be remanded to the district court and (2) the protective order be reversed and remanded.

## II. DISCUSSION

### A. Privilege Log

We begin with the question of whether the district court erred when it accepted BDO's claim of attorney-client privilege based on the privilege log.

### 1. Legal Standards

"The application of the attorney-client privilege is a 'question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents.'" *In re Auclair,* 961 F.2d 65, 68 (5th Cir. 1992) (quoting *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985)); *see also Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981). "The clearly erroneous standard of review applies to the district court's factual findings." *King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713, 721 (5th Cir. 2011) (quoting *United States v. Neal*, 27 F.3d 1035, 1048 (5th Cir. 1994)). We review de novo the district court's application of the controlling legal standards. *See id.*; *In re Avental, S.A.*, 343 F.3d 311, 318 (5th Cir. 2003).

"The attorney-client privilege limits the normally broad disclosure requirements of Federal Rule of Civil Procedure 26 . . . ." *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 472 (E.D. Pa. 2005). For a communication to be protected under the privilege, the proponent "must prove: (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or

legal services, or assistance in some legal proceeding." *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997). Determining the applicability of the privilege is a "highly fact-specific" inquiry, and the party asserting the privilege bears the burden of proof. *Stoffels v. SBC Commc'ns, Inc.*, 263 F.R.D. 406, 411 (W.D. Tex. 2009) (citing *United States v. Kelly*, 569 F.2d 928, 938 (5th Cir. 1978)); *see also Hodges*, 768 F.2d at 721. "Once the privilege has been established, the burden shifts to the other party to prove any applicable exceptions." *Perkins v. Gregg Cty.*, 891 F. Supp. 361, 363 (E.D. Tex. 1995) (citation omitted). Ambiguities as to whether the elements of a privilege claim have been met are construed against the proponent. *See Scholtisek v. Eldre Corp.*, 441 F. Supp. 2d 459, 462–63 (W.D.N.Y. 2006) (listing cases).

Because the attorney-client privilege "has the effect of withholding relevant information from the fact-finder," it is interpreted narrowly and "applies only where necessary to achieve its purpose." *Robinson*, 121 F.3d at 974 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)). Courts have indicated that the privilege should be granted cautiously where administrative investigations are involved. *See F.T.C. v. TRW, Inc.*, 628 F.2d 207, 211 (D.C. Cir. 1980) (citing *Okla. Press Publ. Co. v. Walling*, 327 U.S. 186, 213 (1946)).[1]

## 2. Analysis

The EEOC argues that the district court erred when it concluded that all communications between a corporation's employees and its counsel are per se privileged and inverted the burden of proof, requiring that the EEOC prove that BDO improperly asserted the attorney-client privilege as to its withheld

---

[1] We are aware of the U.S. Supreme Court's recent decision in *McLane Corp. v. EEOC*, No. 15-1248, 2017 WL 1199454 (S. Ct. Apr. 3, 2017). That case, while informative, has no bearing on the ultimate disposition of this case.

documents.[2]  *See Hodges*, 768 F.2d at 721.  Thus, central to our determination of whether the district court erred is the question of whether BDO's privilege log sufficed to establish a prima facie showing of attorney-client privilege.  We hold that it did not.  Given the factual background of this case, the HR context in which it takes place, and the nature of Bower's allegations, the privilege log in its current form is not sufficient to serve its purpose.  *See In re Auclair*, 961 F.2d at 68; *Stoffels*, 263 F.R.D. at 411.  Specifically, the log possesses three types of deficiencies that prevent the court from determining the applicability of the privilege: (a) entries that are vague and/or incomplete, (b) entries that fail to distinguish between legal advice and business advice, and (c) entries that fail to establish that the communications were made in confidence and that confidentiality was not breached.  We address each of these categories in turn.

### a. Vague or Incomplete Entries

Although Rule 26 "does not attempt to define for each case what information must be provided,"[3] 1993 Advisory Comm. Notes to Fed. R. Civ. P. 26 ¶ 33, a privilege log's description of each document and its contents must provide sufficient information to permit courts and other parties to "test[] the merits of" the privilege claim, *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982).[4]  "Determining whether a particular communication is subject

---

[2] Although the magistrate judge did not explicitly address the burden of proof issue, she did, for example, state to the EEOC: "You haven't made a sufficient showing that that's an improperly claimed privilege when Counsel is . . . copied on a lot of these—on all these documents."

[3] Rule 26 provides that a party claiming the privilege shall describe the nature of withheld documents and communications "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege."  Fed. R. Civ. P. 26(b)(5)(A)(ii).

[4] Because Rule 26 does not create a requirement as to what information must be included in a privilege log and the adequacy of a privilege log is determined on a case-by-case basis, there is some variation as to the level of detail courts have found to be sufficient. *See e.g.*, *Horton v. United States*, 204 F.R.D. 670, 673 (D. Colo. 2002) (privilege log must "describe[] in detail the documents or information claimed to be privileged and the precise reasons the materials are subject to the privilege asserted"); *cf. Sid Mike 99, L.L.C. v. Suntrust Bank*, No. 2:07-CV-02453, 2009 WL 3255209, at *6 (W.D.

to a privilege should not be a guessing game for the [c]ourt." *Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Res., Inc.*, No. 03-1496, 2004 WL 1299042, at *9 (E.D. La. June 4, 2004). Blanket claims of privilege, generalized descriptions of a document, and conclusory statements that a document is privileged are not sufficient to prove a privilege claim. *See El Paso*, 682 F.2d at 539; *Nutmeg Ins. Co. v. Atwell, Vogel & Sterling*, 120 F.R.D. 504, 510 (W.D. La. 1988). Rather, the privilege's proponent "must provide the court with enough information to enable the court to determine privilege, and . . . show by affidavit that precise facts exist to support the claim of privilege." *Nutmeg Ins.*, 120 F.R.D. at 510; *see also von Bulow v. von Bulow*, 811 F.2d 136, 145–46 (2d Cir. 1987) (finding that the proponent must establish the privilege's existence "through competent evidence," not "mere conclusory or ipse dixit assertions"). "The law is well-settled that, if a party fails to make the required showing, by not producing a privilege log or by providing an inadequate one, the court may deem the privilege waived." *In re Univ. Serv. Fund Tel. Billing Pracs. Litig.*, 232 F.R.D.669, 671 (D. Kan. 2005).

We agree with the EEOC that many of BDO's log entries lack sufficient detail to permit a determination as to whether the entire document or portions thereof are protected from disclosure. *See El Paso*, 682 F.2d at 541. For example, numerous log entries fail to identify a sender, recipient, date, or provide a substantive description of the subject matter; state only that "legal advice" was sought; and/or do not indicate whether the communications were made, and maintained, in confidence. Some entries have only vague descriptions such as "discrimination claim," "internal investigation," or "work environment claim."

---

Tenn. Oct. 6, 2009) (privilege log that identified date, time, type, subject, author, addressee(s), and other recipient(s) for each document was adequate because it enabled the opposing party to sufficiently assess the proponent's attorney-client privilege claim).

No. 16-20314

Emails involving counsel are also problematic, as the log's descriptions do not indicate whether a particular entry consists of one email or a string of emails—a distinction that may be dispositive as to whether the privilege applies. *See In re Univ. Serv. Fund*, 232 F.R.D. at 673 (holding that "many, if not most, e-mail strands present unique issues": some individuals who receive or are copied on the e-mails within a strand "may receive only a portion of the strand while others may receive the entire strand"; an e-mail within a strand "may be sent or copied to an individual or group of individuals who are not part of the attorney-client relationship, thus waiving the privilege"; and one e-mail within a strand "may contain entirely factual and thus non-privileged information, while another e-mail within the same strand may quite clearly seek or render legal advice"); *see also Stafford Trading, Inc. v. Lovely*, No. 05-C-4868, 2007 WL 611252, at *8 (N.D. Ill. Feb. 22, 2007) (treating an email that forwarded another email as two separate communications and holding that privilege was waived for both if either one was sent to an unidentified recipient).

BDO contends that the position statements it submitted to the EEOC, along with private conversations between the parties, provided the necessary factual underpinnings for its privilege log. This argument is unpersuasive. As the EEOC notes, position statements are not "'facts' to which an affiant competently testifies" but rather "a compilation of legal theories and factual characterizations" made by an attorney. *See von Bulow*, 811 F.2d at 145–46; *Nutmeg Ins.*, 120 F.R.D. at 510. Additionally, BDO has not presented affidavits or other evidence that would allow the court to assess whether attorney-client privilege applies to each entry on the log. *See Bowne of N.Y. City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993) (stating that a privilege log typically provides sufficient detail to determine "whether the document is at least potentially protected from disclosure" and "[o]ther required information" is "then typically supplied by affidavit or deposition testimony"); *see also*

*SmithKline Beecham*, 232 F.R.D. at 478 (finding privilege log descriptions sufficient where they were supported by counsel's affidavit stating that the communications were made for the purpose of securing or providing legal services and/or legal advice). Even assuming that BDO's position statements are admissible evidence, they do not provide enough information for the court to determine whether specific items on the log are actually privileged. The magistrate judge's ruling to the contrary sheds no additional light on why the privilege log communications are per se privileged. We therefore hold that at least some log entries are too vague and/or incomplete to adequately "test[] the merits of [BDO's privilege] claim."[5]  *See El Paso*, 682 F.2d at 541.

### b. Distinction Between Legal and Business Advice

"[A] confidential communication between client and counsel is privileged only if it is generated for the purpose of obtaining or providing legal assistance . . . ."  *In re Cty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007). Legal advice, as contrasted with business advice, "involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." *Id.* Courts have held that "[w]here business and legal advice are intertwined, the legal advice must predominate for the communication to be protected." *Neuder v. Battelle Pac. Nw. Nat'l Lab.*, 194 F.R.D. 289, 292 (D.D.C.

---

[5] BDO asserts that its log was sufficient because it is similar to the privilege log at issue in *King v. University Healthcare System*. *See* 645 F.3d at 721 (expressing approval for a log that "list[ed] the authors and recipients of . . . e-mails, a brief description of each withheld communication, the amount of each document withheld, and the type of privilege asserted"). However, *King* did not hold that a similar privilege log would be sufficient in all cases, and such a holding would be inconsistent with the fact-specific inquiry Rule 26 requires. Further, *King* is distinguishable in key ways: it did not involve an HR employee or in-house counsel; it did not occur in the context of an administrative investigation; it was a proceeding on the merits (where the district court likely had an evidentiary context in which to consider the privilege log); and King "offered only speculation that the e-mails [we]re not covered by privilege because they were made for a purpose other than obtaining legal advice," in contrast to the specific allegations Bower provides in her sworn declaration. *See id.*

No. 16-20314

2000); *see also Great Plains Mut. Ins. Co. v. Mut. Reinsurance Bureau*, 150 F.R.D. 193, 197 (D. Kan. 1993).

There is no presumption that a company's communications with counsel are privileged. *See TVT Records v. Island Def Jam Music Grp.*, 214 F.R.D. 143, 148 (S.D.N.Y. 2003). "[C]ommunications by a corporation with its attorney, who at the time is acting solely in his capacity as a business advisor, [are not] privileged," *Great Plains*, 150 F.R.D. at 197, nor are documents sent from one corporate officer to another merely because a copy is also sent to counsel, *Freeport-McMoran*, 2004 WL 1299042, at *25. For these reasons, courts have stated that simply describing a lawyer's advice as "legal," without more, is conclusory and insufficient to carry out the proponent's burden of establishing attorney-client privilege. *See United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996) ("Calling the lawyer's advice 'legal' or 'business' advice does not help in reaching a conclusion; it *is* the conclusion."); *Coltec Indus. v. Am. Motorists Ins. Co.*, 197 F.R.D. 368, 373 (N.D. Ill. 2000) ("[D]escribing a document as 'legal advice' . . . is not the same as *establishing* that the documents are immune from discovery.").

Here, BDO's privilege log does not provide sufficient detail to meet its burden of allowing opposing counsel or the trial court to determine whether entries merely described as "legal advice," or that included or courtesy copied attorneys, actually contained privileged legal advice. *Cf. Scott v. Chipotle Mexican Grill, Inc.*, 94 F. Supp. 3d 585, 600–01 (S.D.N.Y. 2015) (finding sufficiently detailed a privilege log entry that had been revised from "[d]iscussion of legal advice concerning Chipotle's apprentice position" to "[d]iscussion of legal advice among corporate employees responsible for receipt and implementation of advice re: Classification of Chipotle's Apprentice Position, as well as emails conveying advice and attachment identified in Privilege Log Entry No. 1"). Furthermore, not only does the log include conclusory descriptions of "legal advice," it does so in the context of

11

communications with in-house counsel—an area courts have acknowledged presents unique challenges when it comes to establishing attorney-client privilege. *See Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 38 (E.D.N.Y. 2013); *Stoffels*, 263 F.R.D. at 411; *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 797 (E.D. La. 2007). These challenges are further compounded where HR personnel, such as Bower, are involved. *See Koumoulis*, 295 F.R.D. at 45.

The privilege log's lack of description, coupled with Bower's sworn declaration that many of the communications described as "legal advice" were not made for the purpose of seeking and imparting legal advice,[6] compels the conclusion that the log entries warranted closer scrutiny than the trial court provided. The district court therefore erred when it determined, on the showing made, that these entries sufficed to prove BDO's prima facie case of privilege.

### c. Confidentiality

"It is vital to a claim of [attorney-client] privilege that the communication have been made and maintained in confidence." *Robinson*, 121 F.3d at 976 (quoting *United States v. Pipkins*, 528 F.2d 559, 563 (5th Cir. 1976)). The party invoking the privilege "must have a reasonable expectation of confidentiality, either that the information disclosed is intrinsically confidential, or by showing that he had a subjective intent of confidentiality." *Id.* (citing *Pipkins*, 528 F.2d at 563). "[D]isclosure of any significant portion of a confidential communication waives the privilege as to the whole." *El Paso*, 682 F.2d at 538 (quoting *United*

---

[6] BDO argues that the district court did not have discretion to consider Bower's declaration because the EEOC did not submit the declaration to the magistrate judge. However, the subpoena was a dispositive matter triggering Federal Rule of Civil Procedure 72(b) and the district court's right to receive further evidence. *See EEOC v. Schwan's Home Serv.*, 707 F. Supp. 2d 980, 987 (D. Minn. 2010) (holding that "an application to enforce an administrative subpoena . . . where there is no pending underlying action before the [c]ourt, is generally a dispositive matter"); *see also NLRB v. Frazier*, 966 F.2d 812, 817–18 (3d Cir. 1992).

*States v. Davis*, 636 F.2d 1028, 1043 n.18 (5th Cir. 1981)).

BDO's privilege log is too vague to enable a determination of "which BDO officials were properly within the sphere of confidentiality or whether dissemination to some employees broke the confidentiality, even if confidentiality initially existed."  At minimum, the log leaves open questions about (1) whether emails courtesy copied to a third party remained privileged, *see Morgan v. N.Y. State Dep't of Env't Conservation (In re Morgan)*, 9 A.D.3d 586, 588 (N.Y. 2004) (stating that communications made with the expectation of confidence lose privilege when "carbon copied to a third party"), (2) whether matters communicated to attorneys were done so with the intention of remaining privileged, *see United States v. Bump*, 605 F.2d 548, 551 (10th Cir. 1979) (stating that "[w]hen a matter is communicated to the lawyer with the intention or understanding it is to be repeated to another, the content of the statement is not within the privilege"), and (3) whether non-attorney individuals to whom communications were sent were within the sphere of confidence, *see Upjohn*, 449 U.S. at 394 (stating that the court must look at the individuals' specific duties to determine if the proponent has demonstrated that they are within the scope of the matters communicated and whether the evidence proves that each of those individuals is "sufficiently aware" that the communication is for the purpose of seeking or obtaining legal advice).  In light of the foregoing, it is clear that BDO's log does not meet the controlling legal standard of enabling a determination of what is privileged and what is not.

### 3. Conclusion

For these reasons, we hold that BDO did not prove its prima facie case of attorney-client privilege as to all of the log entries.  It is well-established that the privilege is the exception to Rule 26's broad disclosure requirements for relevant information and that it must therefore be applied narrowly and with particularity.  *See Robinson*, 121 F.3d at 974 (quoting *Fisher*, 425 U.S. at 403);

No. 16-20314

*El Paso*, 682 F.2d at 541.  Because the privilege log lacks sufficient detail to ascertain whether the exception applies in this case, the magistrate judge erred when she placed the burden on the EEOC to show that BDO's withheld communications were not privileged.  Accordingly, we vacate the district court's judgment and remand for a determination applying the correct legal standards.

Although we leave to the district court's discretion how to proceed on remand, we note that in camera review will likely be necessary given the facts and circumstances of this case.  *See* EDNA SELAN EPSTEIN, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE 1216 (5th ed. 2007) (explaining that because "[p]rivilege logs often leave much to be desired in terms of completeness, . . . . the result is that cases where *in camera* reviews are conducted . . . have now become legion."); CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE & PROCEDURE § 5507 p. 573 (1986) (stating that courts widely use in camera inspections of privileged information to "determin[e] the preliminary facts of the privilege and its exceptions").

## B. Protective Order

We turn next to the question of whether the district court applied the correct legal standard when it granted BDO's request for a protective order.

### 1. Legal Standard

"[T]his court reviews discovery orders for abuse of discretion . . . ." *Crosswhite v. Lexington Ins. Co.*, 321 F. App'x 365, 367 (5th Cir. 2009); *see also Sanders v. Shell Oil Co.*, 678 F.2d 614, 618 (5th Cir. 1982) (reviewing protective order under abuse of discretion standard); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (analyzing the district court's adoption of the magistrate's judge's denial of a protective order for abuse of discretion).  However, whether the district court used the correct legal standard in determining whether to issue a protective order is reviewed de

novo. *See In re Avantel*, 343 F.3d at 318 (a court "review[s] the application of the controlling law de novo" in an attorney-client privilege case).

A "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The movant bears the burden of showing that a protective order is necessary, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett,* 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). "A trial court enjoys wide discretion in determining the scope and effect of discovery," and it is therefore "unusual to find an abuse of discretion in discovery matters." *Sanders*, 678 F.2d at 618.

## 2. Analysis

After considering the parties' arguments, the magistrate judge concluded that the EEOC had communicated with witnesses and obtained information about their discussions with BDO attorneys. Based on these findings, she ordered the EEOC to: (1) refrain from communicating with Bower or other BDO employees about conversations with BDO's counsel; (2) disclose employees' names, dates of disclosure, and the substance of their conversations with BDO's counsel; (3) produce notes of each of these conversations, redacting the EEOC's work product; (4) return to BDO any documents containing privileged communications; and (5) destroy any notes or documents that were created as a result of reviewing the documents. The EEOC argues that the magistrate judge's decision to grant the protective order was grounded in the same legal error as the order denying the EEOC's application for subpoena enforcement—an "overly broad" legal standard that "wrongly swe[pt] under the umbrella of non-disclosure all communications involving an attorney."

We agree that the trial court appears to have applied an incorrect legal

standard.  During the show cause hearing, the magistrate judge on several occasions articulated an overly broad definition of attorney-client privilege. For example, during a colloquy with the EEOC regarding the protective order, the magistrate judge stated, "Frankly, anything that comes out of that lawyer's mouth is legal advice," explained that her position was that "anything that's communicated from or to [c]ounsel is privileged and [Bower] cannot discuss that in any manner," and said to counsel, "I'm telling you that if it's communications from or to an attorney, it's privileged."  The magistrate judge also approved BDO's contention that "the default position should be that if the conversation is with an attorney, a lawyer who has an ethical responsibility, should not invade that privilege" and rejected the EEOC's assertion that "it's not legal advice when [Bower is] being told to do things that are not ethical, that are not within the bounds of her position."  These statements support the EEOC's claim that the magistrate judge granted and determined the scope of the protective order based on an erroneous interpretation of the law.

We do not, however, hold that a protective order is unwarranted, and we leave the decision whether to grant such an order to the trial court.  Because the magistrate judge's incorrect application of the legal standard may have affected both her analysis of the allegedly disclosed communications and the breadth of the protections she imposed in her order, we remand so that BDO's request for protection may be considered under the proper legal standard for determining privilege.

### III. CONCLUSION

For the foregoing reasons, we VACATE the district court's judgment and REMAND for a determination consistent with this opinion.