**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**
**No. 96-11359**

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**CLARENCE ROBINSON,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court**
**for the Northern District of Texas**

_____

August 29, 1997

Before WISDOM, DUHÉ, and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

At issue in this appeal from a perjury conviction is whether the lawyer-client privilege covers: (1) a forfeiture notice received by Clarence Robinson and handed by him to a lawyer representing Robinson in another proceeding; and (2) that transfer of the notice, as well as Robinson's communications with that, and another, lawyer, both of whom declined to represent Robinson in the forfeiture proceedings. The district court rejected the claimed privilege and admitted the evidence. We **AFFIRM**.

I.

When Robinson was arrested by DEA agents for drug-related offenses in early January 1994, approximately $3500 was seized. Several weeks later, on 14 February, the DEA sent Robinson a notification of forfeiture (the notice) at the Lubbock County Jail, where he was incarcerated. Robinson was then represented in the criminal proceeding by appointed counsel, Mike Thomas.

In late February, Thomas visited Robinson at the jail to discuss that representation. The conference took place in a secure meeting room so that prisoners could meet in secrecy with their lawyers. During the meeting, Robinson handed the notice to Thomas, asking Thomas if he would represent him (Robinson) in the forfeiture proceeding.

Thomas responded that he had been appointed to represent Robinson only with respect to the criminal proceeding. Robinson then asked Thomas to forward the notice to Ruth Cantrell, a lawyer who had previously represented Robinson.

Thomas left the jail with the notice in hand. He promptly made a copy of the notice and mailed it to Cantrell, together with a letter explaining his conversation with Robinson; made a copy of the notice for his (Thomas') file; and returned the original notice to Robinson, along with a copy of his letter to Cantrell. Thomas included a letter of his own to Robinson.

Thomas kept copies of the documents in his file.    His representation of Robinson in the criminal matter ended in May 1994, when new counsel was appointed for Robinson's appeal.

By letter to Robinson in March 1994 referencing "seizure", Cantrell stated that she did not feel qualified to represent Robinson.    She also sent him copies of the materials Thomas had provided her.

In March 1995, Robinson sought, *pro se*, the return of the money forfeited in accordance with the 1994 notice.    His position in district court was that he did not know of the forfeiture proceeding:    "If it was done, it was without any notice being sent to this plaintiff".    The district court denied relief.

Robinson appealed, stating in his *pro se* brief that he had never received a notice of forfeiture, or seen the notice which the DEA published in "USA Today", or had actual notice.    Our court remanded the case for a hearing on whether the DEA had properly notified Robinson of the forfeiture.

On remand, Robinson testified in June 1996 as follows:

> Well, your honor[,] I never did receive forfeiture papers while I was locked up in jail.  And I never did notice that they was taking anything, my money or anything like that, because I wasn't told they was taking my money.  I wasn't given a receipt for my money, and my money was not drug related money.
>
> The court: All right, sir.  So it is your position that you did not receive actual notice from the government that they were

- 3 -

    going to seek forfeiture of this money; is
    that right?

    Robinson:  No, sir.

    The court:  Okay.  When you said "no, sir",
    you are agreeing with my statement?

    Robinson:  Yes, sir.

    The court:  Okay.  And you were in the county
    jail here in Lubbock; is that right; at the
    time these proceedings took place?

    Robinson:  Yes, sir.


The next day, an Assistant United States Attorney, who had previously contacted Thomas about the matter, told Thomas about Robinson's testimony that he had never received the notice.  Thomas responded that he might have documents in his file pertaining to the truthfulness of that testimony.

Shortly thereafter, a grand jury subpoena issued for any such documents.  Thomas produced them for the grand jury.  The produced documents, to include those subpoenaed  from, and produced by, Cantrell, were:  the copies of the notice given by Robinson to Thomas and sent to Cantrell, and the letters those lawyers sent each other and Robinson concerning the forfeiture.

Robinson was indicted for perjury.  After a pre-trial suppression hearing, in which he asserted the lawyer-client privilege as to Thomas and Cantrell, the trial court ruled from the bench that, based on the evidence presented,

- 4 -

this communication between Mr. Robinson and attorneys Thomas and Cantrell were communications that were not intended to remain confidential. In other words they were not made in confidence.

The document in question--that is, the notice of seizure--was a government document created and received from the Government by Mr. Robinson. He was seeking to give this document to these attorneys in an effort to have them represent him in the DEA seizure and forfeiture proceedings. For that reason I do not believe that the communications were cloaked with the attorney/client privilege.

Likewise, the order denying the suppression motion stated in part:

The Court finds that the communication in question between Defendant Robinson and attorneys Thomas and Cantrell was a communication not intended to remain confidential. The communication dealt with a document created by the Government and received by Mr. Robinson from the Government. The communication involved Mr. Robinson seeking legal counsel to contest the DEA seizure and forfeiture proceedings. Such communication was not made in confidence.

At the trial on the perjury charge, this objected-to evidence was admitted. Robinson was convicted of perjury.

## II.

Robinson contends that the district court erred in not excluding the testimony of Thomas and Cantrell. Along this line, he concedes, of course, that the notice *per se* is not cloaked with the lawyer-client privilege. Instead, he asserts that his receipt of it is.

"Except as otherwise required by the Constitution of the United States" or other authority listed in Rule 501, the lawyer-client privilege "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience". FED. R. EVID. 501. Accordingly, we review a district court's ruling on such a claim as "a question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents". *United Sates v. Neal*, 27 F.3d 1035, 1048 (5th Cir. 1994), called into doubt on other grounds by *United States v. Crouch*, 51 F.3d 450 (5th Cir. 1995); *Hodges, Grant & Kaufmann v. IRS*, 768 F.2d 719, 721 (5th Cir. 1985). As usual, factual findings are reviewed for clear error; conclusions of law, *de novo*. *Neal*, 27 F.3d at 1048.

The purpose of the privilege is to "encourage full and frank communication between lawyers and their clients and thereby promote broader public interests in the observance of law and administration of justice". *United States v. (Under Seal)*, 748 F.2d 871, 873 (4th Cir. 1984) (quoting *Upjohn v. United States*, 449 U.S. 383, 389 (1981)), vacated as moot on other grounds by 757 F.2d 600 (4th Cir. 1985). On the other hand, because the privilege "has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose". *Fisher v. United States*, 425 U.S. 391, 403 (1976); *see also* *In re Grand Jury Proceedings (Jones)*, 517 F.2d 666, 671-72 (5th Cir.

1975) ("criminal liability" exception to general rule of non-confidentiality of identity of client "a limited and rarely available sanctuary" because it "runs counter to the dominant aims of the law").

The assertor of the lawyer-client privilege must prove: (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding. *Neal*, 27 F.3d at 1048; *In re Grand Jury Proceedings*, 517 F.2d at 670.

A.

The first question is whether the copy of the notice which Thomas retained is privileged in its own right, as distinguished from Robinson's contemporaneous communications to Thomas when Robinson handed over the notice. It goes without saying that documents do not become cloaked with the lawyer-client privilege merely by the fact of their being passed from client to lawyer. "If the client is compellable to give up possession, then the attorney is". 8 *Wigmore on Evidence* § 2307 (McNaughton Rev. 1961).

In the case of pre-existing documents, if they "could have been obtained by court process from the client when he was in possession[, they] may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice". *Fisher*, 425 U.S. at 403. This result

is in accordance with the purposes of the privilege; a client will not be less likely to show his lawyer important documents, because those documents do not become more easily discoverable by their revelation to the lawyer. *Id.* at 403. In the case at hand, the notice was discoverable when in Robinson's hands. It did not become less so by its transfer to Thomas. Moreover, the notice was not only received by Robinson from a third party, it was government-generated. Furthermore, we find no exception to the general rule because the document produced by Thomas was a copy of the notice, the original having been returned by him to Robinson.

Our inquiry does not end here, however. The admission in evidence of the notice (copy) retained by Thomas, without more, could arguably not have caused a rational juror to find, beyond a reasonable doubt, that Robinson received that notice, either from the Government or Thomas. There are several plausible, and obvious, explanations why Thomas might have been in possession of the notice without Robinson having ever been in possession. For this reason, we must address two more issues: whether the fact of Robinson's transfer/transmission of the document to Thomas is privileged; and whether Robinson's statements to Thomas contemporaneous with that transmission, as well as Cantrell's communications (letter) to Robinson, are privileged.

B.

Whether the privilege covers Robinson's possession of the document and its delivery to Thomas presents a slightly more difficult issue than did the document *qua* document. There is authority for the position that, with respect to pre-existing documents, "sending the document to the lawyer for perusal or handing it to him and calling attention to its terms ... and the knowledge of the terms and appearance of the documents which the lawyer gains thereby are privileged from disclosure by testimony in court". 1 **McCormick on Evidence** § 89 (4th ed.); *accord,* **In re Grand Jury Proceedings**, 959 F.2d 1158, 1165 (2d Cir. 1992) (attorney client privilege in the context of pre-existing documents "attaches not to the information but to the communication of the information").

The more reasoned approach, however, is that, although a communication of "the place of custody of a document may be a part of a communication ... and may also be a confidential one ... ordinarily it will be neither". 8 **Wigmore on Evidence** § 2309 (McNaughton Rev. 1961). This is because, again, the privilege is to be construed narrowly to apply only where its application would serve its purposes; where it is doubtful that a client means to communicate confidentially, the privilege does not attach, as the client would have acted similarly even without the privilege.

The instant case is no exception. There is no evidence that Robinson intended that the fact of his possession of the notice be

"communicated" to Thomas when he handed the document to Thomas. Robinson merely handed the notice to Thomas, hoping to secure his representation; the document delivery was intended merely to facilitate the representation, *not* as a statement of possession. Such delivery cannot reasonably be construed as a "communication". Again, we note that Robinson has the burden of showing each element of the privilege. He has failed to prove that his transfer of the notice was a communication of the fact of his possession of it.

In any event, assuming *arguendo* that Robinson's transfer of the notice was a "communication" of his possession of the notice, there is no evidence that Robinson meant for the communication to be *confidential*. "It is vital to a claim of privilege that the communication have been made and maintained in confidence". **United States v. Pipkins**, 528 F.2d 559, 563 (5th Cir. 1976). The assertor of the privilege must have a reasonable expectation of confidentiality, either that the information disclosed is intrinsically confidential, or by showing that he had a subjective intent of confidentiality. *Id.* at 563; **United States v. Melvin**, 650 F.2d 641, 646-47 (5th Cir. Unit B 1981). It is not enough for the meeting to be between a lawyer and would-be client, or that the meeting take place away from public view. *See id.* at 646-47.

Obviously, Robinson's possession of the notice was not intrinsically confidential; the government-generated document, addressed to Robinson in care of the county jail, was delivered to

- 10 -

the jail by certified mail. The return receipt is stamped February 22, 1994, and is signed by an authorized person for the county. In short, knowledge of the delivery of the notice to the jail was quite public, to say the least. Restated, mailing the notice to the jail, and its receipt by the jail, preclude its subsequent possession by Robinson from being intrinsically confidential.

Furthermore, Robinson showed no intent to retain in confidence the fact of his possession of the notice. Toward that end, "we must look to the services which the attorney has been employed [or sought] to provide and determine if those services would reasonably be expected to entail the publication of the clients' communications". *In re Grand Jury Proceedings*, 748 F.2d at 875. Robinson was seeking legal representation in the forfeiture action. It is difficult to imagine a course of representation in that regard which would not entail the disclosure of the notice and Robinson's receipt of it. The notice would quite likely be one of the first documents, if not the first, referenced in any such representation. Under these circumstances, any expectation by Robinson of the confidentiality of his possession of the notice would be manifestly unreasonable. In short, the possession was not in confidence.

C.

Finally, we address both Thomas' testimony about Robinson's statements to him when Robinson handed him the notice, and

Cantrell's testimony about her communication with Robinson. Again, "[i]t is vital to a claim of privilege that the communication have been made and maintained in confidence". *Pipkins*, 528 F.2d at 563.

1.

Robinson's statements to Thomas were concerned with, and intended to secure, legal representation. The fact of representation, or an attempt at securing it, are generally not within the privilege. *In re Grand Jury Proceedings (Jones)*, 517 F.2d at 670-71.

There is an exception to this rule, however, where revealing the identity of the client would be probative or relevant to a criminal charge against the client. *Id.* at 672. But, again, as in all cases, the client must have had a reasonable expectation of confidentiality, either because the information disclosed is intrinsically confidential, or because he had a subjective intent of confidentiality. *Pipkins*, 528 F.2d at 563; *United States v. Melvin*, 650 F.2d 641, 646-47 (5th Cir. Unit B 1981).

Robinson's statements to Thomas, including his request for legal representation (therefore his identity as a client or would-be client), are not intrinsically confidential, for the same reasons that his transfer of the notice to Thomas was not. Any reasonably foreseeable representation would entail the disclosure that Thomas represented Robinson and, therefore, the substance of Robinson's statements to Thomas at their meeting. This information

would become public very quickly.  Indeed, prior to citing the notice of forfeiture, perhaps the only thing which might earlier become public in a challenge to the forfeiture, *see supra*, would be Thomas' statement, written or oral, that he was representing Robinson in that proceeding.  Expecting otherwise is unreasonable.

Robinson's statements to Thomas were not confidential.  The same applies equally to Cantrell's communication with Robinson.

### 2.

In any event, even if Robinson's statements to Thomas, or Cantrell's communication with Robinson, are cloaked in the lawyer-client privilege, their admission in evidence would be harmless error.  *See* FED. R. EVID. 103; ***United States v. Aucoin***, 964 F.2d 1492, 1499 (5th Cir. 1992) (applying harmless error analysis to claim of lawyer-client privilege); ***United States v. Moody***, 923 F.2d 341, 352 (5th Cir. 1991) (same); ***United States v. Jimenez Lopez***, 873 F.2d 769, 771 (5th Cir. 1989) ("even if abuse of discretion in the admission or exclusion of evidence is found, the error is reviewed under the harmless error doctrine").  The notice and Thomas' testimony about Robinson handing it to him, neither of which are protected by the privilege, would be more than sufficient for a rational juror to find, beyond a reasonable doubt, that Robinson committed perjury.

### III.

For the foregoing reasons, the judgment is

- 13 -

*AFFIRMED.*