Matthews SMITH, et al., Plaintiffs,

v.

TEXACO, INC. and Star Enterprises, et al., Defendants.

No. 1:96–CV–0749.

United States District Court, E.D. Texas, Beaumont Division.

March 29, 1999.

James Erick Payne, Provost & Umphrey, Beaumont, TX, Reuben A. Guttman, Brian P. McCafferty, Charles V. Firth, Provost & Umphrey, Washington, DC, for plaintiff.

J. Courtney Wilson, Scheuermann & Jones, New Orleans, LA, for intervenor-plaintiffs.

Stephen Fred Fink, Thompson & Knight, Dallas, TX, Paul W. Gertz, Germer & Gertz, Beaumont, TX, for Texaco.

Victor Scott Kneese, Bracewell & Patterson, Houston, TX, Robert J. Hambright, Orgain, Bell & Tucker, Beaumont, TX, for Star.

Robert Ellison Meadows, Neil Martin, Nancy J. Brown, Gardere Wynne Sewell & Riggs, Houston, TX, for Aramco Services Co.

Dewey J. Gonsoulin, Mehaffy & Weber, Beaumont, TX, for Saudi Refining, Inc.

John Michael Dorman, Locke Liddell & Sapp, Houston, TX, for Shell Oil Co.

## MEMORANDUM OPINION PURSUANT TO ORDER COMPELLING DISCLO-SURE OF DOCUMENTS

COBB, District Judge.

Before the court for consideration is the question whether plaintiffs may discover an internal study of race and employment commissioned by Star Enterprises–Texaco. The report by Hewitt Associates [Hewitt Report] involved a compilation of employment records and various statistical analyses of that data. Part of the report consists of tables identifying employees by race and listing their pay grade, experience, years of service, education, salary, tenure in position, performance management program evaluations,

and most recent promotion. The report also includes graphical analysis of the data. It appears that the Star Enterprise law department ordered the study, supposedly for use in anticipated litigation. The report of Hewitt Associates was directed to Special Counsel.

Star Enterprises allowed a class member and prospective party plaintiff to review part of the report on or about February of 1997. In January of 1997, a group of African–Americans employees met to consider joining in litigation against Star Enterprises and to express their concerns to the company's management. Six highly placed African–Americans employees met with several members of Star Enterprises' management including its president, Seth Sharr. At the suggestion of Mr. Sharr, the group of employees elected a representative to examine the Hewitt report to evaluate the company's efforts to remedy possible discrimination. The group selected Kenneth Ford, a manager in the marketing department, to review the report. He flew to the Houston in February and was allowed to review the portions of the report pertaining to the marketing department. He did not review any conclusions contained in the report.

The issue at hand is whether documents sought by Matthew Smith, et al. are subject to discovery. Star Enterprises asserts that these documents are privileged and thus outside the scope of plaintiffs' permissible perusal. Smith replies that voluntary disclosure has dispelled any privilege that may have attached. Defendants deny this.

Star's emphatic and persistent arguments on points of law are curiously combined with a singularly evasive approach to substantiating its claims. Not one attorney of record has offered evidence of his involvement in establishing an attorney-client privilege. Neither of the two affidavits asserting that in-house counsel commissioned the report were authored by attorneys. Indeed, repeated requests from the court to produce in person witnesses capable of testifying to the issue of waiver have failed to inspire counsel for the defense to produce even one.

Instead, Star's arguments against complete waiver rest primarily on the bareboned affidavit of one Darryl Shields. The affidavit accompanying the copy of the Hewitt report submitted in camera to the court does not disclose Mr. Shields' position within the company. It says only that he is the custodian of the Hewitt Report and a member of the shadowy Star Enterprises "team" dedicated to its review. This silent sentinel apparently monitored Ken Fords' review of the report and can testify to which pages Mr. Ford was able to examine. Since counsel for the defense was unable to persuade Mr. Shield or his equivalent to trek the eighty-some miles from Star headquarters in Houston to a hearing in Beaumont, the court's continuing curiosity must unfortunately go unsated. Regardless, the court must rule on the record before it.

We begin our analysis by noting that "it goes without saying that documents do not become cloaked with the lawyer-client privilege merely by the fact of their being passed from client to lawyer." *United States v. Robinson,* 121 F.3d 971, 975 (5th Cir.1997). Rather, only "(1) [w]here legal advice of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his insistence permanently protected; (7) from disclosure by himself or by the legal a advisor; (8) except the protection be waived." *United States v. El Paso Co.,* 682 F.2d 530, 538 (5th Cir.1982), cert. denied, 466 U.S. 944, 104 S.Ct. 1927, 80 L.Ed.2d 473 (1984) (quoting J. Wigmore Evidence § 2292 at 554 (J. McNaughton rev.1961)). Disclosure need not be total to constitute waiver; "disclosure of any significant portion of a confidential communication waives the privilege as to the whole." *Industrial Clearinghouse, Inc. v. Browning Manufacturing,* 953 F.2d 1004, 1007 (5th Cir.1992) (citations omitted).

The purpose of the attorney-client privilege determines its contours. *El Paso,* 682 F.2d at 538. The purpose of the doctrine is to promote the free flow of information from clients to counsel. This is accomplished by assuring that information shared with one's attorney does not thereby become more vulnerable to disclosure. However, because

the privilege withholds relevant information from the fact-finder, it is narrowly construed. *Robinson,* 121 F.3d at 974. Materials that would be discoverable in the possession of a party do not become immune from discovery by being shared with an attorney. *Robinson,* 121 F.3d at 975. In sum, materials become neither more, nor less discoverable by transmission to an attorney.

■ The data contained in the Hewitt report was drawn from employee records kept in the normal course of business. These records listing employees by race, pay grade, experience, years of service, education, salary, tenure in position, performance evaluations, and promotions and dates thereof are ordinarily discoverable. The report may or may not present this information in a different format; Star has not disclosed the manner in which it kept its records to the court. Merely reorganizing material at the direction of counsel does not invoke the privilege. The data tables listing employee information are outside the scope of the attorney client privilege and subject to discovery.

■ However, the report also contains interpretive material comprised of tables, lists, statistical analyses, and graphical representations of the data. These conclusions could well constitute confidential communication from client to counsel. They may well have been made to elicit legal advice. Ken Ford was not allowed to view them. The graphs and analysis contained in the Hewitt report are covered by the attorney client privilege.

Defendants have not invoked the work-product privilege, and the court has strong reservations as to whether Star Enterprises could substantiate such a claim. Nevertheless, in the interest of a complete analysis, we will briefly address the issue.

■ The work product privilege is not coextensive with the attorney client privilege. Federal Rule of Civil Procedure 26(b)(3) governs the work product privilege.[1] For documents to qualify for the privilege they must be created in anticipation of litigation by a party or his agent. "In anticipation of litigation" means only that the primary motivating purpose behind the creation of the document was to aid in possible future litigation. *El Paso,* 682 F.2d 530. Documents meeting these criteria are presumed to be privileged.

To override this presumption, the moving party must make a two-part showing. First, that he has a substantial need of the materials, and second, that he is unable to recreate or obtain the materials without undue hardship. Even where a party has made this showing, the court retains an obligation to protect the mental process of the attorney producing the materials.

■ "The work product privilege ... does not exist to protect a confidential relationship but to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Shields v. Sturm, Ruger & Co.,* 864 F.2d 379, 382 (5th Cir. 1989). "At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *El Paso,* 682 F.2d 530 (quoting *United States v. Nobles,* 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975)).

■ The differences in policies driving the work-product privilege result in a different doctrine of waiver. "The mere voluntary disclosure to a third person is insufficient in itself to waive the work product privilege[;] ... the work product privilege is waived when the attorney requests the witness to disclose the information or when the attorney

1. "Trial Preparation: Materials Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insuror, or agent) only upon a showing that the parties seeking discovery have substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means in ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

discloses the information to the court voluntarily or makes no objection when it is offered." *Shields*, 864 F.2d at 382 (citation omitted).

█ To the extent that this privilege is implicated, the court finds that plaintiffs have made the requisite showing to override it with respect to the Hewitt Report data tables. Plaintiffs have shown a substantial need for these materials and that they would be unable to recreate or otherwise obtain them without an undue hardship. The court's order privileging analyses and conclusions in the report is sufficient to protect any strategic preparation done by counsel or consultants.

Therefore the court has ordered that a redacted copy of the Hewitt report be disclosed to plaintiffs' counsel.[2] In the interest of an expeditious resolution of this issue the court will make available to plaintiffs' counsel its copy of the report with appropriate redactions.

---

**2.** While the court will not compel Star to disclose the report's conclusions, it would be helpful if it did so. Before the arbitration approved by the parties and to take place next month, voluntary disclosure could well make all parties better able to resolve this dispute with alacrity and efficiency.