# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 4, 2014

No. 13-30244

Lyle W. Cayce
Clerk

DEAN VICKNAIR,

Plaintiff – Appellant

v.

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS;
STATE OF LOUISIANA,

Defendants – Appellees

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:10-CV-551

Before BARKSDALE, PRADO, and HAYNES, Circuit Judges.

PER CURIAM:*

Dean Vicknair filed this action against the Louisiana Department of Public Safety and Corrections (DPS) and the State of Louisiana, claiming violations of Title VII of the Civil Rights Act, 42 U.S.C. §2000e, *et seq.*, and Louisiana Revised Statutes § 23:967. Defendants were awarded summary judgment under Federal Rule of Civil Procedure 56 on Vicknair's retaliatory-reassignment and constructive-discharge claims, but denied it on whether he

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-30244

had been suspended in retaliation for filing his first of two complaints with the Equal Employment Opportunity Commission (EEOC). During discovery, Vicknair failed repeatedly to produce certain documents for DPS; it was awarded sanctions. At trial on the one remaining claim (retaliation for filing first EEOC complaint), the court excluded, based on attorney-client privilege, an e-mail between the assistant to the superintendent of DPS and its general counsel. After Vicknair completed his case-in-chief, Defendants moved successfully under Rule 50 for judgment as a matter of law. Vicknair challenges the summary judgment, sanctions, exclusion of the e-mail, and judgment as a matter of law. AFFIRMED.

## I.

Vicknair began working at DPS in 1989, as a temporary, part-time clerk in the records unit of the office of motor vehicles. Subsequently, he was employed full time, and promoted several times, first to work in insurance compliance, and then in more technical roles, as DPS began using the Internet. In 1999, Vicknair moved to the data processing unit, as a computer-support specialist, to develop a website for DPS. He was promoted to programmer and worked on Lotus Notes administration.

In February 2004, Vicknair left DPS to work at the Department of Transportation and Development. That June, he testified as part of DPS' internal investigation (sexual harassment) against his former DPS manager, Selvaratnam.

In November 2005, in the wake of Hurricane Katrina, DPS rehired Vicknair. Approximately three and one-half years later, in April 2009, Selvaratnam, now DPS' IT director, reassigned Vicknair to fill a vacancy. According to Vicknair, the new position had "the same responsibilities", but he felt "micromanaged" by his supervisor, Artall.

No. 13-30244

Almost immediately after the reassignment, there was tension between Artall and Vicknair, including one episode in which Artall refused to sign leave slips when Vicknair sought leave for a death in the family, and another, in which Artall erroneously accused Vicknair of failing to complete assignments.

Vicknair approached Tillman, compliance program director for DPS' equal-employment-opportunity section (DPS' EEOC director), and Boudreaux, DPS' undersecretary for the office of management and finance, claiming a hostile-work environment. Boudreaux transferred Vicknair temporarily from Artall's supervision, pending an investigation. Several days later, Vicknair filed grievances with DPS against Artall, for a hostile-work environment; the next week, against Selvaratnam, for retaliation.

In late June, Vicknair accepted DPS' proposed solution for his grievance against Artall: for Artall, people-skills and management training; for Vicknair, transfer to a different supervisor. DPS later closed, for insufficient evidence, Vicknair's grievance against Selvaratnam.

In late August, Vicknair began the process to file his first EEOC complaint, including delivering the results of his own investigation—a timeline—to Tillman, DPS' EEOC director, claiming retaliatory reassignment by Selvaratnam because of Vicknair's participation in the 2004 investigation of Selvaratnam. He signed the complaint in early September.

That November, DPS internal-affairs investigators interviewed Vicknair, concerning his inclusion of certain e-mails in the timeline he had delivered to Tillman. Vicknair admitted using an encrypted database—the "mail-journaling database"—to which only he had access, to locate and copy e-mails from third parties within DPS. One such e-mail was from Jones, confidential assistant to DPS' deputy secretary Edmonson, to DPS' general counsel, commenting on the internal investigation of Selvaratnam. As a result

3

No. 13-30244

of that interview with Vicknair, on 4 November 2009, undersecretary Boudreaux suspended Vicknair with pay, pending a full investigation.

That 23 November, Vicknair filed a second EEOC complaint. He claimed the suspension constituted retaliation for filing his first EEOC complaint and stated he would most likely be terminated after his suspension.

By a 21 December letter of intent to terminate, Boudreaux informed Vicknair he had violated DPS' IT policies (Email & Internet Usage, User Responsibilities) and other DPS policies (Lawful Orders, Conduct Unbecoming an Employee). In his 22 December response to Boudreaux's letter, Vicknair elected to retire on 26 December; in a 28 December e-mail to the EEOC, Vicknair attached that response to Boudreaux's letter, requesting it be included as an amendment to his second EEOC complaint.

Vicknair filed this action in August 2010. He claimed harassment, retaliation, and a hostile-work environment, in violation of Title VII and Louisiana Revised Statutes § 23:967. Prior to then, in early November 2009, DPS internal-affairs investigators sought initially to secure documents Vicknair had copied. DPS continually requested return of the e-mails, first as part of that internal investigation, and later in requests for production of documents in this action. Document discovery closed in September 2011.

In October 2011, coinciding with the ongoing discovery disputes, DPS moved for summary judgment on all claims. In May 2012, DPS expressed concern to Vicknair's counsel over Jones' e-mail to DPS' general counsel being included as an exhibit in support of Vicknair's opposition to DPS' second summary-judgment motion. DPS informed Vicknair of its intent to move to compel if it did not receive confirmation that all requested documents had been produced. By late June 2012, DPS still had not received copies of the requested files or access to Vicknair's electronic database.

4

No. 13-30244

Therefore, that July, DPS moved to compel production and requested a protective order and sanctions. The court granted DPS' motion in October 2012, requiring Vicknair to produce a paper copy of every e-mail and a copy of the drive on which they were stored, as well as awarding DPS $250 in court costs and attorney's fees, respectively.

Earlier that year, in February, summary judgment had been awarded against Vicknair's retaliatory-reassignment and constructive-discharge claims. It had been denied, however, for his claim, based on his second EEOC complaint, that DPS retaliated against him by suspending him for filing his first EEOC complaint (claimed retaliation by Selvaratnam).

Trial was held in February 2013 on that remaining claim. In his case-in-chief, Vicknair presented evidence that DPS employees expected him, as Lotus Notes administrator, to be able to access their accounts, although he was not authorized to peruse employee e-mails without prior authorization. Vicknair testified Selvaratnam despised him, should never have been promoted, and should have been fired. Vicknair maintained he had done nothing unethical, and, as the systems administrator, "had the keys to the kingdom".

During his case-in-chief, when Vicknair attempted to introduce Jones' e-mail to DPS' general counsel, DPS objected, noting its repeated attempts to have the document excluded on privilege grounds. The court questioned Vicknair's counsel; and, in support of the e-mail's admission, Vicknair provided the following offer of proof: he had obtained the file while searching the mail-journaling database, filtering for his name, to find out "[w]hat else have they hidden from me?". The court ruled the attorney-client privilege applied and, therefore, did not allow the e-mail in evidence.

No. 13-30244

Also during Vicknair's case-in-chief, DPS' deputy secretary, Edmonson, was called, out of order, as a witness by DPS. He testified he had no qualms about reprimanding or even firing friends if they disobeyed rules, and he did not hold grudges against employees for filing grievances.

As discussed *supra*, Boudreaux suspended Vicknair on 4 November 2009 and signed the 21 December 2009 letter of intent to terminate him. The decisions to suspend and terminate Vicknair, conveyed by Boudreaux, were at the core of his retaliation claim being tried. Nevertheless, he did *not* call Boudreaux as a witness.

After Vicknair completed his case-in-chief, DPS moved under Rule 50 for judgment as a matter of law. In granting the motion, the court ruled: "[T]he plaintiff has not established that there is any evidence that should go to the jury, upon which a reasonable jury could make a decision that the appointing authority, Ms. Boudreaux, made the decision to suspend Mr. Vicknair with pay, pending an investigation[, as retaliation for Vicknair's having] testified previously . . . or [having] filed a grievance against Mr. Selvaratnam or against Mr. Artall".

**II.**

Vicknair challenges: the summary judgment against his retaliatory-reassignment and constructive-discharge claims; the discovery sanctions; the Jones-e-mail's exclusion at trial; and the judgment as a matter of law on his retaliation claim for filing his first EEOC complaint.

For the three merits claims, and although Vicknair's briefing is unclear, we construe his briefs to advance three inter-related and overlapping theories of retaliation: retaliatory reassignment, constructive discharge, and retaliatory suspension. As discussed, summary judgment was awarded DPS

6

for the first two issues; for the third, it was awarded judgment as a matter of law.

Vicknair maintains he asserted a claim on another ground:  imposition of a hostile-work environment.  Vicknair presented evidence of a hostile-work environment, however, as part of his retaliatory-reassignment and constructive-discharge theories, rather than as a separate claim.  *See, e.g.*, *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992) (treating constructive discharge as aggravated hostile-work-environment claim), *aff'd*, 511 U.S. 244 (1994).

And, although Vicknair cites Louisiana Revised Statutes § 23:967 as a basis for relief in his complaint, there is no mention of that statute in his briefs.  Therefore, the state-law issues are not considered.  *E.g.*, *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 653 (5th Cir. 2004) ("Issues not raised or inadequately briefed on appeal are waived.") (citations omitted).

## A.

A summary judgment is reviewed *de novo*, applying the same standard as did the district court.  *E.g.*, *Feist v. La., Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (citation omitted).  Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law".  Fed. R. Civ. P. 56(a).  In determining whether to grant summary judgment, the court views the facts and evidence in the light most favorable to the non-movant, Vicknair.  *E.g.*, *Dameware Dev., LLC v. Am. Gen. Life Ins. Co.*, 688 F.3d 203, 206–07 (5th Cir. 2012) (citation omitted).

## 1.

"The antiretaliation provision [42 U.S.C. § 2000e-3(a)] seeks to prevent employer interference with unfettered access to Title VII's remedial

mechanisms." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation and internal quotation marks omitted). Title VII does not prohibit all retaliation, but rather those employment actions that are "materially adverse, one[s] that would dissuade a reasonable worker from making or supporting a charge of discrimination". *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009) (alterations, citation, and internal quotation marks omitted). "A plaintiff establishes a *prima facie* case of retaliation by showing (i) he engaged in a protected activity, (ii) an adverse employment action occurred, and (iii) there was a causal link between the protected activity and the adverse employment action." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir.) (citation omitted), *cert. denied*, 133 S. Ct. 136 (2012). Once plaintiff makes a *prima facie* showing, the burden shifts to the employer to present "a legitimate, non-discriminatory or non-retaliatory reason" for the challenged action. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (citations omitted). The burden on the employer entails production rather than persuasion. *Id.* (citation omitted). If the employer presents a legitimate reason, plaintiff "bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose". *Id.* (citation omitted).

In the context of summary judgment, "plaintiff's subjective belief, without more, that an adverse employment action was retaliatory is insufficient to survive summary judgment". *Gollas v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 425 F. App'x 318, 321 (5th Cir. 2011) (citing *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000)).

Where, as here for the retaliatory-reassignment claim, lateral reassignment constitutes the claimed adverse employment action, the surrounding circumstances are considered. *E.g.*, *Aryain v. Wal-Mart Stores*

*Tex. LP*, 534 F.3d 473, 485 (5th Cir. 2008) (finding such transfer did not constitute adverse employment action where there was no change in pay and father of college-age plaintiff requested transfer).   There was no evidence Vicknair suffered a reduction in salary; instead, he received a change in his salary range.   Likewise, he did not present evidence of a loss of standing with his fellow employees, a decrease in benefits, a loss of prestige, or a lessening of responsibilities.   *See, e.g.*, *Magiera v. City of Dallas*, 389 F. App'x 433, 438 (5th Cir. 2010) (citing, *inter alia*, *Stewart*, 586 F.3d at 332).

Even assuming *arguendo* the reassignment constitutes an adverse employment action, Vicknair must establish a causal link between the protected activity (his involvement in the 2004 investigation), and the adverse employment action (in 2009).   Although Vicknair believed his reassignment in April 2009 to being under Artall was in retaliation for his participation in the 2004 sexual-harassment investigation of Selvaratnam, his subjective belief is not enough to establish the requisite causal link between the adverse employment action and the protected conduct.   Accordingly, summary judgment against this claim was proper.

**2.**

Vicknair was required to exhaust administrative remedies, by filing an EEOC complaint, before seeking judicial relief because "a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims".   *Pacheco v. Mineta*, 448 F.3d 783, 788–89 (5th Cir. 2006) (citation omitted).   In district court, DPS maintained the second EEOC complaint, for retaliation, did not put DPS on the requisite notice of the constructive-discharge claim.   The court pretermitted the question of whether

Vicknair exhausted administrative remedies and dismissed the constructive-discharge claim on the merits.

In any event, we "may affirm the district court's decision on any basis presented to the district court". *Haverda v. Hays Cnty., Tex.*, 723 F.3d 586, 591 (5th Cir. 2013) (citation and internal quotation marks omitted).  Accordingly, we turn first to exhaustion *vel non*.

Although EEOC claims are construed somewhat broadly to "protect[] unlettered lay persons making complaints", that broad construction extends "as far as, but no further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge".  *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993) (citation and internal quotation marks omitted).  "However, 'a charging party's rights should [not] be cut off merely because he fails to articulate correctly the legal conclusion emanating from his factual allegations.'"  *Simmons-Myers v. Caesars Entm't Corp.*, 515 F. App'x 269, 272 (5th Cir.) (alteration in original) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970)), *cert. denied*, 134 S. Ct. 117 (2013).  Instead, the court asks whether the charge "stated sufficient facts to trigger an EEOC investigation and to put an employer on notice of the existence and nature of the charges".  *Id.* at 272–73. (citations omitted).

Even assuming Vicknair adequately amended his second EEOC complaint by forwarding to the EEOC a copy of his response to Boudreaux's letter of intended termination, the amended complaint cannot be construed so broadly as to encompass the constructive-discharge claim.  Vicknair's second EEOC complaint expressly claimed retaliation, and nothing else, for filing his first EEOC complaint.  The reasonable scope of an EEOC investigation of that second EEOC complaint would encompass DPS' response to Vicknair's filing the first EEOC complaint, including DPS' investigation of his use of the mail-

No. 13-30244

journaling system and DPS' subsequent decision to suspend or terminate Vicknair. Nothing in the facts alleged in the second EEOC complaint put DPS on notice of a possible constructive-discharge claim. Therefore, Vicknair failed to exhaust administrative remedies and cannot seek judicial relief on that claim. Summary judgment was proper.

**B.**

We review for abuse of discretion sanctions imposed by the district court under Rule 37(b) (failure to comply with a court's discovery order). *E.g.*, *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012). Conclusions of law are reviewed *de novo*; findings of fact, for clear error. *Id.* (citation omitted). Rule 37(b) permits, *inter alia*, striking pleadings, dismissing the action, and rendering a default judgment against the noncompliant party. Fed. R. Civ. P. 37(b)(2)(A). Sanctions must be both just and specifically related to the claim at issue in the discovery order. *KeyBank Nat'l Ass'n v. Perkins Rowe Assocs., LLC*, No. 12-30998, 2013 WL 4446820, at *5 (5th Cir. 21 Aug. 2013) (per curiam) (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)). The movant for sanctions need not demonstrate willfulness for "sanctions which are less harsh than a dismissal or default judgment". *Chilcutt v. United States*, 4 F.3d 1313, 1322 (5th Cir. 1993).

After well over a year of attempting to secure production of the e-mail correspondence copied from the mail-journaling database, DPS moved to compel production and simultaneously moved for a protective order and sanctions. In granting the motion and awarding to DPS $250 in attorney's fees and costs, respectively, the district court noted DPS' multiple attempts to obtain the information and the inconsistency between Vicknair's claim he did not have access to the e-mails and his inclusion of a confidential, undisclosed

11

No. 13-30244

e-mail (Jones' e-mail to DPS' general counsel) in his opposition to DPS' second summary-judgment motion.    The court also rejected Vicknair's proposed solutions, including having DPS search its own systems for a log file to track Vicknair's previous access or for DPS' attorneys to drive to Baton Rouge with a laptop to have Vicknair transfer the database digitally.    The court granted minimal sanctions in response to Vicknair's refusal to satisfy his discovery obligations.    Those sanctions were both just and related to the discovery order. There was no abuse of discretion.

## C.

Evidentiary rulings by the district court are reviewed for abuse of discretion.    *E.g.*, *United States v. Pruett*, 681 F.3d 232, 243 (5th Cir. 2012); *see* Fed. R. Evid. 103 (Rulings on Evidence).    "The application of the attorney-client privilege is a question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents."    *United States v. Nelson*, 732 F.3d 504, 517–18 (5th Cir. 2013) (citation and internal quotation marks omitted); *see* Fed. R. Evid. 501 (Privilege in General).    The application of controlling law is reviewed *de novo*; factual findings, for clear error.    *Nelson*, 732 F.3d. at 518 (citation omitted).

The party asserting privilege bears the burden to show:    "(1) a confidential communication; (2) to a lawyer or subordinate; (3) for the primary purpose of securing a legal opinion, legal services, or assistance in the legal proceeding".    *Id.* (citing *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997)).    Courts also require the party asserting privilege to have a reasonable expectation the communication is confidential, either by the intrinsic nature of the communication or the subjective intent of the assertor.    *Robinson*, 121 F.3d at 976 (citations omitted).    The fact a communication takes place between a lawyer and a client is not enough, alone, to invoke the privilege.    *Id.* (citation

12

omitted).     Likewise, the privilege must be asserted specifically as to a particular document.  *See In re Santa Fe Int'l Corp.*, 272 F.3d 705, 713 (5th Cir. 2001).

At trial, when Vicknair attempted to introduce the e-mail from Jones to DPS' general counsel, DPS objected, claiming the document was both "subject to attorney-client privilege" and "not presented to [DPS] in the regular course of discovery".  After the court found Jones' e-mail was "an attorney-client document", Vicknair made an offer of proof:  he had come upon the document while searching the mail-journaling database and had printed the e-mail because it referenced his case.  The court ruled: "[I]t's still attorney-client privilege.  This was directed by a client to the attorney and another client".

There is no reversible error.  The confidential document was between the "confidential assistant" to DPS' deputy secretary and its general counsel, concerning a pending internal investigation.

## D.

Judgment as a matter of law under Rule 50 is proper when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue".  Fed. R. Civ. P. 50(a)(1).  The district court's decision to grant or deny a motion for judgment as a matter of law is reviewed *de novo*. *E.g.*, *Cardenas v. United of Omaha Life Ins. Co.*, 731 F.3d 496, 499 (5th Cir. 2013) (citation omitted).  We apply the same standards as did the district court, reviewing all evidence in the record, drawing reasonable inferences in favor of the non-movant, and refraining from encroaching upon the province of the jury in making credibility determinations or weighing evidence.  *E.g.*, *Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 362 (5th Cir. 2004) (citations omitted).

Where the person who makes the decision to terminate an employee is *not* the person accused of harboring retaliatory animus, plaintiff is required to "demonstrate that those with discriminatory intent had influence or leverage over the official decisionmaker", in order to "impute . . . discriminatory attitudes to the formal decisionmaker". *Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 203 (5th Cir. 2007) (alterations and internal quotation marks omitted) (quoting *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000)); *see also Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1190 n.1, 1193-94 (2011) (applying similar standard in Uniformed Services Employment and Reemployment Rights Act context, including providing description of fable underlying cat's-paw theory, referenced *infra*); *LeMaire v. La. Dep't of Transp. and Dev.*, 480 F.3d 383, 390 (5th Cir. 2007) ("Evidence of [Selvaratnam's] specific involvement in the decision would be significant, since [Selvaratnam] had the greatest motivation to retaliate against [Vicknair]".).

To develop a *prima facie* case of retaliation based on Vicknair's filing his first EEOC complaint, he had to show an adverse employment action that was linked to that complaint. Accepting DPS' decisions to suspend and terminate Vicknair as requisite adverse employment actions, he was required to show a causal link between his first EEOC complaint and those decisions. As noted, Boudreaux, who conveyed those decisions, was *not* called as a witness by Vicknair in his case-in-chief, after which judgment as a matter of law was granted. Arguably, as the person who could have served as the most likely link, or "cat's paw", between Vicknair and Selvaratnam, perhaps Boudreaux could have provided testimony to allow a reasonable jury to find for Vicknair. The second possible link, Edmonson, called out of turn by DPS, testified he had no qualms about reprimanding or firing friends if they disobeyed the rules, and

that he did not hold grudges against employees for filing grievances or complaints.

Drawing all inferences in favor of Vicknair, a reasonable jury lacked a legally sufficient basis to link Boudreaux, as the decisionmaker, to a retaliatory motive. Instead of supporting retaliation, trial testimony served to reinforce the extensiveness and seriousness of Vicknair's unauthorized access to DPS e-mails, and thus the legitimacy of DPS' decisions to suspend and terminate Vicknair for his violations of internal policies. Accordingly, judgment as a matter of law was proper on the claim of retaliation for Vicknair's filing his first EEOC complaint.

**III.**

For the foregoing reasons, the sanctions order and judgment are AFFIRMED.